This is an appeal from the decision of the Acting Commissioner of Banking and Insurance approving the application of the respondent, Union County Trust Company, to change the location of its branch office in the City of Elizabeth.
Under date of October 29, 1948, the Union County Trust Company addressed a letter to the Honorable John Dickerson, then Commissioner of the Department of Banking and Insurance, which it described as its application for "the change of location" of one of its branch offices from 113 Broad Street to the southwest corner of Westminster Avenue and Prince Street in the City of Elizabeth. The letter set forth its reasons for the desired change and expressed the hope that "we *Page 297 
have given you adequate information to justify the removal of the branch and that you will give us your early approval of our request so that we may commence negotiations for the various purchases and sales, the drawing of plans, and the letting of the contract." In response to this letter the Commissioner, by letter dated December 29, 1948, advised the Union County Trust Company that, pursuant to section 22 of The Banking Act of 1948 (R.S.
17:9A-22), he had caused an investigation to be made, had made a personal inspection of the area, had concluded that the area which would be served by the branch office after its change of location was substantially different from the area presently served by it and did thereby disapprove the application. There was no notice or hearing prior to this action. By letter dated January 10, 1949, the Union County Trust Company requested that the Commissioner's disapproval be set aside, pointing out that it had not been called upon for any additional proof in support of its application and stating that, "inasmuch as you did not require proof, we were entitled to assume that you considered the facts as set forth, in our application sufficient to justify the granting of the application. If on the contrary you required proof, then we should have received a request from you to furnish such proof." Immediately upon receipt of this letter, Acting Commissioner Gough advised by letter dated January 11, 1949, that, since Commissioner Dickerson's resignation he was Acting Commissioner and that he had reviewed the file and was not prepared to set aside Commissioner Dickerson's action.
Thereafter, under date of March 11, 1949, the Union County Trust Company addressed a letter to Acting Commissioner Gough making application to change the location of its branch office to premises which included the proposed new premises referred to in the original letter application to Commissioner Dickerson. After the filing of the March 11th application, the Acting Commissioner notified the applicant and the other banking institutions in Elizabeth that hearing thereon would be held on March 25, 1949. The hearing was duly held, the applicant and the Central Home Trust Company, *Page 298 
an objector, were represented by counsel and testimony was taken. On April 12, 1949, Acting Commissioner Gough rendered his decision which set forth that hearing had been held, that he had made personal inspection and was satisfied "that the area which would be served by such branch office after its change in location would not substantially differ from the area theretofore served by such office" and approved the application. The Central Home Trust Company filed notice of appeal from this decision. SeeRule 3:81-8. On its appeal it does not attack the propriety of the Commissioner's exercise of discretion or the sufficiency of the supporting evidence; it confines its attack to the single ground that the determination by Commissioner Dickerson was resjudicata and that, consequently, Acting Commissioner Gough's contrary determination was beyond his lawful authority. The courts have, with increasing frequency, been called upon to deal with this issue as to when common law concepts of res judicata
should be applied to determinations by administrative agencies. See Schopflocher, The Doctrine of Res Judicata in AdministrativeLaw, Wis. L. Rev., pp. 5, 198 (1942); Res Judicata inAdministrative Law, 49 Yale L.J. 1250 (1940); 42 Am. Juris.,p. 519 (1942).
In Federal C.C. v. Pottsville Broadcasting Co.,309 U.S. 134 (1940), the Supreme Court pointed out that modern administrative tribunals "are the outgrowth of conditions far different" from those applicable to common law courts; that, unlike common law courts which deal primarily with adversary proceedings between litigants seeking to adjust conflicting claims, administrative agencies such as those regulating transportation, banking and other industries, are primarily concerned with the public interest in its relation to the needs of the community; and that this difference precludes the "wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts." In recognition of the foregoing, we find many expressions in the federal cases that, in general, rules of resjudicata will not be applied to preclude an administrator from departing from an earlier determination. See Grandview *Page 299 Dairy v. Jones, 61 F. Supp. 460, 462 (D.C.N.Y. 1945); affirmed, 157 F.2d 5 (C.C.A.2d 1946); certiorari denied,329 U.S. 787 (1946). See, also, Pearson v. Williams,202 U.S. 281 (1906), where Mr. Justice Holmes pointed out that decisions by the Immigration Board which were required to be made promptly and in somewhat summary fashion "cannot constitute resjudicata in a technical sense," and Wilbur v. United States,281 U.S. 206 (1930), where the court held that a new Secretary of Interior was not precluded from revoking a determination by his predecessor as to whether a particular individual could participate in the distribution of tribal funds. vom Baur, in his treatise on Federal Administrative Law, states flatly that, in the absence of statutory provision evidencing a contrary Congressional intent, res judicata does not apply to administrative determinations and that a question determined by an administrative agency may be determined anew when raised in a later proceeding. 1 vom Baur, Federal Administrative Law, § 256 (1942). See Wallace Corp. v. National Lab. Rel. Bd.,323 U.S. 248 (1944); rehearing denied, 324 U.S. 885 (1945). However, inNational Labor Relations Board v. Baltimore T. Co.,140 F.2d 51, 54 (C.C.A. 4th 1944); certiorari denied, 321 U.S. 795
(1944), Judge Parker, speaking more cautiously, pointed out that the doctrine of res judicata is not to be applied to administrative proceedings at least where they are not"quasi-judicial" in nature.
In New Jersey, as in many of the other states, courts have sought to rest their decisions upon concepts which distinguish"quasi-judicial" action of administrative agencies from their"quasi-legislative or executive" and "administrative or ministerial" action, holding that quasi-judicial determinations have the res judicata incidents of common law judgments. SeeFinnegan v. Miller, 132 N.J.L. 192, 195 (Sup. Ct. 1944). We find these quoted terms troublesome since their precise meaning is unclear and courts frequently differ in their judgments as to whether particular action is quasi-judicial or otherwise. SeeSchopflocher, supra, at pp. 37-42, and cases there cited. It has been suggested, with much force, *Page 300 
that a more satisfactory approach would be to ascertain, from the terms of the organic act governing the agency and with particular regard to the nature of the proceeding and its effect upon private interests and the provisions for notice, hearing, finality and review, whether the Legislature contemplated that the administrative determination should attain the status of a common law judgment with its customary attributes. Cf. R.S.
34:15-58; Mangani v. Hydro, 119 N.J.L. 71 (E. A. 1937).
In any event, we believe that generally licensing determinations by administrative agencies such as the Department of Banking and Insurance, where not preceded by notice and hearing, should not attain quasi-judicial status with the resjudicata incidents of common law judgments. Cf. Penna. R.R. Co.v. N.J. State Aviation Com., 2 N.J. 64, 68 (1949), where Mr. Justice Heher pointed out that, "the power to license airports conferred by the act under review is quasi-judicial for its exercise is expressly conditioned upon the ascertainment of the operative facts from evidence adduced at a public hearing." A contrary view would ordinarily operate unfairly to the applicant who would find a binding judgment against him without having been afforded any opportunity to be heard or represented by counsel or to submit supplemental data in support of his application. In addition, it would unnecessarily impede the agency's proper discharge of its continuing responsibility to administer the provisions of its governing act in the public interest. From day to day agencies receive numerous applications for approvals and similar determinations and informal responses are expeditiously sent, without any contemplation by either the applicant or the agency that the agency will be barred from later reaching a contrary conclusion upon a more complete presentation at formal hearing. In the instant matter, the Commissioner acted on the bank's informal letter of application without notice or hearing; there is no suggestion that either the applicant or the Commissioner contemplated that his original disapproval was to attain the status of a binding common law judgment, and we find nothing whatever in the Banking Act *Page 301 
which would indicate any legislative intent that it should have such effect.
Apart from the above, the Acting Commissioner's determination may be sustained under the authorities which recognize that such administrative agencies have inherent power, comparable to that possessed by the courts (Cf. Rule 3:60-2), to rehear and reconsider. See McFeely v. Broad of Pension Commissioners,1 N.J. 212, 217 (1948); Stone v. Duggan Bros., 1 N.J. Super. 13,17 (App. Div. 1948); vom Baur, supra, § 183. In theMcFeely case, the court in discussing the powers of the Board of Pension Commissioners, stated that "possessing as they do, in analogy to the authority of courts of general jurisdiction at common law, the inherent power of reconsideration, they may also, in the exercise of a sound discretion, vacate a pension grant." The application to the Acting Commissioner, although worded as a new application, may be treated, in substance, as an application for reconsideration of the earlier summary disposition. It was made within a reasonable time and may be considered as having been addressed to the discretion of the Acting Commissioner upon the showing that the applicant had filed its original informal application upon the assumption that it would not finally be denied without opportunity for the submission of formal proof in support, and that the denial was made without prior notice and hearing and without opportunity for full presentation with the aid of counsel.
We are satisfied that the Acting Commissioner's decision of April 12th was within the lawful exercise of his discretion and, in the light of this determination, find no occasion for passing upon the additional supporting contentions advanced by the respondents.
The decision of the Acting Commissioner is affirmed. *Page 302