10 N.J. Super. 13 (1950)
76 A.2d 82
FAMILY FINANCE CORPORATION, A CORPORATION OF NEW JERSEY, APPELLANT,
v.
CHRISTOPHER A. GOUGH, DEPUTY AND ACTING COMMISSIONER OF BANKING AND INSURANCE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1950.
Decided October 19, 1950.
*16 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Walter F. Waldau argued the cause for the appellant (Messrs. Stryker, Tams & Horner, attorneys).
Mr. Oliver T. Somerville, Deputy Attorney General of New Jersey, argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney General of New Jersey, attorney).
Mr. Sol D. Kapelsohn argued the cause for North Jersey Finance Service, Inc. (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
Mr. Max Mehler argued the cause for Auto Loan Company, et al., amici curiae.
The opinion of the court was delivered by JACOBS, S.J.A.D.
The appellant Family Finance Corporation appeals from the denial of its application for a license *17 to operate a small loan business at 66 Hudson Street, Hoboken, New Jersey.
Appellant's application for license was duly filed and, in accordance with R.S. 17:10-5, notice thereof was published in a newspaper and served upon all licensees having places of business in Hudson County. Objection to the license was filed by North Jersey Finance Service and thereupon the respondent issued notice that a hearing on the application would be held at the Department of Banking and Insurance. No testimony was introduced at the hearing but the respondent announced that he would permit the applicant and the objector to file briefs and that he would consider the matter. There was no dispute in the briefs which were thereafter filed as to the responsibility and general fitness of the applicant; however, there was serious dispute as to whether the granting of the application would promote the convenience and advantage of the community within the contemplation of R.S. 17:10-5. On this disputed issue the objector pointed out that it had been operating its business in Hoboken for thirty years, its licensed premises were adjacent to those sought to be licensed by the applicant, and another licensee had been operating at a nearby locality in Hoboken for the past four or five years. It urged that, considering their past business experiences and the limited population and unfavorable industrial prospects of Hoboken, the issuance of an additional license was not only unnecessary to meet any demands but would also create a situation in which there was a surplus of lenders competing for insufficient business. On the other hand the applicant urged that in addition to its population Hoboken serves large numbers of persons residing elsewhere, its industrial prospects were good, and the issuance of the license sought would directly promote the convenience and advantage of the community.
Upon the filing of the application and wholly independent of the aforedescribed hearing, the respondent conducted an investigation in accordance with R.S. 17:10-5(b). A report submitted by Principal Examiner Moore to Mr. James M. *18 Sullivan, Chief of the Consumer Credit Division of the Department of Banking and Insurance, embodied the results of interviews with representatives of the local banking institutions, an analysis of the outstanding loan balances of the two licensees and the population in Hoboken, and the conclusion that the community was being served adequately. Mr. Sullivan's memorandum to the respondent analyzed the service rendered by the licensees and the population in Hoboken which he compared with the service rendered and the population in other communities and concluded that "We do not feel that any individual in Hoboken lacks access to a properly licensed agency to meet his consumer credit demands and, until such time as Hoboken shows a return to normal activity and sufficient growth to warrant the probability that the issuance of an additional license will not affect in any way the present service now afforded in this community, we recommend that the application for a license be denied at this time."
Shortly following the receipt of Mr. Sullivan's memorandum the respondent denied the application upon the simple finding that the issuance of the license will not promote the convenience and advantage of the community. There was no accompanying opinion setting forth any basic factual findings. Thereafter counsel for the applicant requested that the denial be set aside and that a further hearing be granted "at which we may submit formal proof and additional evidence and be informed of any findings of fact made." This request was denied and thereupon appeal from the denial of the application for license was taken to this Court. In support of its appeal the appellant contends, primarily, that the Small Loan Law (R.S. 17:10-1 et seq.) may not be construed to authorize the Commissioner to limit the issuance of licenses to otherwise qualified applicants and if it is so construed it is unconstitutional and, secondarily, that the Acting Commissioner erred in failing to make basic findings of fact and in relying upon a policy of limitation which was not embodied in a rule filed with the Secretary of State under Article V, section IV, paragraph 6 of the New Jersey Constitution.
*19 The small loan business has long been the subject of study, legislation and judicial determination. See Gallert, Hilborn and May, Small Loan Legislation (Russell Sage Foundation, 1932); Hubachek, Annotations on Small Loan Laws (Russell Sage Foundation, 1938); 8 Law and Contemporary Problems (Winter, 1941). New Jersey was one of the five large industrial states which early adopted general acts designed to regulate and control the business of making small loans. Thus P.L. 1914, c. 49 provided for the licensing of small loan companies and granted power to the Commissioner of Banking and Insurance to reject an application for license because of lack of character or fitness of the applicant. In 1916 the Russell Sage Foundation submitted its first draft of a Uniform Small Loan Law which adopted the regulatory philosophy of the New Jersey act and some of its provisions.
Despite the requirements in the New Jersey act, numerous companies obtained licenses and towards the close of 1928 there were 437 in operation. Sullivan, in his article on "Administration of a Regulatory Small Loan Law," 8 Law and Contemporary Problems, supra, pp. 146, 147, states that this "large influx of capital led to unethical lending practices, overextension of credit and other extremes." In 1929 the Legislature, acting pursuant to a report of the Joint Legislative Commission to investigate the Department of Banking and Insurance (see P.L. 1928, pp. 791, 811), reduced radically the rate chargeable by small loan companies. P.L. 1929, c. 293. This apparently resulted in withdrawal or threatened withdrawal of many of the licensees and in 1931 the Legislature appointed a commission to inquire into the regulation of the small loan business (see P.L. 1931, p. 1265). In 1932 a majority of this commission recommended that the rate be increased and that the Commissioner of Banking and Insurance be given discretionary powers with respect to the granting of small loan licenses.
In the meantime, further drafts of the Uniform Small Loan Law had been issued by the Russell Sage Foundation. The fourth draft provided, in effect, as did the earlier drafts, that *20 an applicant could demand a license upon paying the fee, filing the bond, and meeting ministerial requirements. However, the fifth draft issued in 1932 departed from the earlier drafts by imposing additional requirements, including the need for a finding by the Commissioner that the granting of the application will promote the convenience and advantage of the community. In discussing this departure Hubachek, supra, at p. 54 says:
"Where competition was too intense events demonstrated that the public interest was not well served. `There is a tendency for excessive competition to increase costs of lending, and consequently to restrain competitive rate reductions.' There was evidence that some licensees were not operating efficiently or were inadequately financed, either condition obstructing attainment of the objectives of the law. Stock promoters, without practical experience or realization of the commercial importance of fair dealings with borrowers, entered the business to its detriment.
"To meet these conditions the recommended system of licensing was changed in 1932. The Commissioner was given fact finding powers the exercise of which permitted wide discretion. The standards established applied both to the qualifications of the applicant and to the conditions in the community where the business was to be conducted."
In 1932 our Legislature adopted the change in the fifth draft and provided (P.L. 1932, c. 62, p. 98) that the license shall be issued if the Commissioner finds, in addition to requirements relating to character and fitness, financial responsibility and net worth, that the granting of the license will promote the convenience and advantage of the community. Following this enactment the Commissioner apparently put into effect what might be described as a general policy of limitation, under which new licenses were not issued unless the Commissioner found that they would promote the convenience and advantage of the community, particularly in the light of its population and estimated "loan capacity." In his 1941 article Sullivan, supra, pp. 148, 149, expressed the opinion that the policy "contributed to the elimination of unethical business practices, unfair competition, overextension of credit; and has a tendency to increase efficiency, reduce costs of operation and thereby encourage voluntary rate reduction which, after all, is most beneficial to the borrowing public's welfare." *21 Although there have been subsequent pertinent enactments no change in the administrative policy has been made; P.L. 1949, c. 109 seems to have strengthened it by continuing the provision for a finding that the granting of the license will promote the convenience and advantage of the community and by adding the requirement that the filing of the application be followed by notice of its pendency, published in a newspaper and served upon all other licensees in the county, and by hearing if objection is filed. Cf. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 89 L.Ed. 2051, 2058 (1945); Cino v. Driscoll, 130 N.J.L. 535, 540 (Sup. Ct. 1943).
In the light of its history, purpose and context (Tappan Washington Memorial Corporation v. Margetts, 9 N.J. Super. 212 (App. Div. 1950)) we have little doubt that the present provision of the Small Loan Law was intended to and does afford to the Commissioner power to limit the number of licenses in a community by declining to issue an additional license therein in the absence of a showing that the granting of the additional license will promote the convenience and advantage of the community within the contemplation of R.S. 17:10-5. The absence of any language referring specifically to the limitation of licenses would not appear significant in view of the Legislature's use of the convenience and advantage clause which is comparable to that used in other regulated fields where limitations of licenses or franchises prevail. R.S. 17:9A-1 et seq. (banking); R.S. 48:2-1 et seq. (public utilities); Hohorst v. Marion Bus Transportation Co., 5 N.J. Super. 279 (App. Div. 1949); Fornarotto v. Board of Public Utility Commissioners, 105 N.J.L. 28 (Sup. Ct. 1928). Cf. Hudson Bergen County Retail Liquor Stores Ass'n. v. Board of Commissioners, 135 N.J.L. 502 (E. & A. 1947). The appellant suggests that the general standard furnished by the convenience and advantage clause is inadequate and that the accompanying delegation to the Commissioner is, therefore, unconstitutional. In Como Farms, Inc., v. Foran, 6 N.J. Super. 306, 312 (App. *22 Div. 1950), this Court had recent occasion to refer to authorities, both state and federal, which have sustained standards of equal generality; we are satisfied that within these authorities the standard in the Small Loan Law, read in context and with regard to the nature of the business being regulated, adequately bridles the Commissioner's power and furnishes a legally sufficient standard to guide him. See Kelleher v. Minshull, 11 Wash.2d 397, 119 P.2d 302 (1941); Weer v. Page, 155 Md. 86, 141 A. 518 (1928); Equitable Loan Society v. Bell, 339 Pa. 449, 14 A.2d 316 (1940). Cf. In the matter of the Arbitration Between New Jersey Bell Telephone Company and Communications Workers of America, New Jersey Traffic Division No. 55, CIO, 5 N.J. 354 (1950); Abelson's Inc., v. New Jersey State Board of Optometrists, 5 N.J. 412 (1950).
The appellant contends that the convenience and advantage clause, as construed and applied, deprives it of its liberty and property in violation of Article I of the New Jersey Constitution and the Fourteenth Amendment of the Federal Constitution. The constitutional propriety of regulating the small loan business in the public interest has been uniformly sustained. See Kelleher v. Minshull, supra; Hubachek, supra; 149 A.L.R. 1425 (1943); 40 Am. Jur., p. 696 (1942). Cf. State v. Guida, 119 N.J.L. 464 (E. & A. 1938). In Maellaro v. Madison Finance Co. of Jersey City, 130 N.J.L. 140, 143 (Sup. Ct. 1943); affirmed, 131 N.J.L. 160 (E. & A. 1944), the court referred to the New Jersey Act as a regulation of the small loan business in the public interest having as its object "the eradication of the abuses and evil practices that had attended" its conduct. The Commissioner, acting within the appropriate statutory delegation, has evidently adopted a general policy of limitation upon the view that unrestricted competition may discourage voluntary rate reductions and may bring the return of many undesirable practices including discouragement or rejection of small but unprofitable loans and encouragement of larger but perhaps unnecessary and socially undesirable loans. This determination *23 of policy may not be stricken down by the courts in the absence of any showing that it does not constitute reasonable regulation of the small loan business which admittedly is clothed with a public interest and is constitutionally subject to regulation. Cf. State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 523 (E. & A. 1935). See Weer v. Page, supra; Kelleher v. Minshull, supra.
We are satisfied that the appellant's attack on the construction and validity of the convenience and advantage clause of the Small Loan Law must fail. We are likewise satisfied that there is no merit to its contention that the Commissioner was obliged, under Article V, section IV, paragraph 6 of the New Jersey Constitution, to file a statement of his general limitation policy with the Secretary of State. That paragraph refers to the filing of formal rules and regulations which are intended to have binding force on the general class of persons affected thereby (cf. Cino v. Driscoll, supra, at p. 540); it does not apply to a departmental course of conduct, such as the Commissioner's general policy of limitation, which was not fixed, did not constitute a hard and fast rule, and was not intended to have binding effect. See Securities and Exchange Commission v. Chenery Corporation, 332 U.S. 194, 202, 91 L.Ed. 1995, 2002 (1947); rehearing denied, 332 U.S. 783, 92 L.Ed. 367 (1947). It may be noted that, unlike that contained in the Federal Administrative Procedure Act (5 U.S.C.A., § 1001 et seq.), there is no legislative provision in New Jersey for the filing or publication of departmental "statements of general policy."
The appellant contends that the respondent erred in failing to make basic findings of fact. It is clear that where the governing statute contains express or implied requirement for such findings they must be present to sustain the administrative agency's order. See Pennsylvania Railroad Co. v. New Jersey State Aviation Commission, 2 N.J. 64 (1949); In the matter of the Arbitration Between New Jersey Bell Telephone Company and Communications Workers of America, New Jersey Traffic Division No. 55, CIO, supra. The problem *24 is more troublesome where legislative requirement is absent. See Gellhorn, Administrative Law, Cases and Comments (2d ed. 1947), pp. 729-761; Feller, "Prospectus for the Further Study of Federal Administrative Law," 47 Yale L.J. 647, 665 (1938). It is generally recognized that in such situation no findings are necessary to support rules and regulations which are deemed legislative in nature. See In re Port Murray Dairy Co., 6 N.J. Super. 285, 293 (App. Div. 1950). However, when dealing with administrative action which affects a named party and is adjudicatory in nature (Philadelphia Co. v. Securities and Exchange Commission, 175 F.2d 808, 816 (D.C. Cir. 1948); judgment vacated, 337 U.S. 901, 93 L.Ed. 1715 (1949)), there is authority which expresses, in comprehensive language, the view that it must be accompanied by basic findings of fact sufficient to support it. Elite Dairy Products, Inc., v. Ten Eyck, Inc., 271 N.Y. 488, 3 N.E.2d 606 (1936); Petition of New York Water Service Corporation, 283 N.Y. 23, 27 N.E.2d 221 (1940). Cf. In the matter of the Arbitration Between New Jersey Bell Telephone Company and Communications Workers of America, New Jersey Traffic Division No. 55, CIO, supra. See Feller, supra, at p. 666:
"It would profit us little to try to find a rational constitutional basis for the requirement. It should suffice that the practical basis is sound enough. The requirement is an excellent one. The advantages of carefully drawn findings are immense. They induce a sense of responsibility on the part of the administrative officer; their formulation aids immeasurably in the formulation of the decision; they limit the issues to be decided on review and save the time of litigants and the courts. All these advantages flow from findings carefully drawn; if they are merely perfunctory they are completely useless."
In Colorado Wyoming Gas Co. v. Federal Power Commission, 324 U.S. 626, 634, 89 L.Ed. 1235, 1241 (1945), the court stressed the importance of clear and complete basic findings of fact by the administrative agency as an aid on judicial review. In New Jersey review of final action or decision by a state administrative agency is available in the Appellate Division and the pertinent court rules contemplate *25 that, insofar as practicable, the review should be on a complete record before the agency. Cf. Rules 3:81-8, 9, 13. While we recognize that care ought be taken to avoid retarding the administrative process with its acknowledged advantages by the imposition of rigidly formal procedures, we doubt that a general requirement that findings accompany an adjudicatory order affecting a named party will have any disquieting or other than helpful effects. Cf. Feller, supra.
Without attempting further expression of general doctrines which may perhaps be applicable to the diverse types of administrative proceedings which prevail under varied statutory provisions, we have reached the conclusion that, under the particular circumstances presented in the instant matter, the applicant should have been afforded further hearing and basic findings of fact upon the denial of its application. It must be borne in mind that at no time during the hearing was it advised of the limitation policy or the issues it was required to meet. No legal proofs whatever were introduced and the reports upon which the respondent relied, although they contained nothing of a confidential nature, were never made part of the hearing nor was the applicant ever afforded an opportunity to challenge any of the factual findings therein; apparently the applicant was not aware of their existence until they were filed in this court as part of the respondent's record pursuant to Rule 3:81-8. Cf. Pennsylvania Railroad Co. v. New Jersey State Aviation Commission, supra, at p. 72; Davis, "Official Notice," 62 Harv. L. Rev. 537, 560 (1949). The decision denying the application contained no basic findings of fact and although it was expeditiously followed by request for further hearing and findings of fact this was denied. Cf. Central Home Trust Co. v. Gough, 5 N.J. Super. 295, 301 (App. Div. 1949). The issues were of importance to the public as well as the parties and the further hearing and findings would not have entailed any significant burden or delay. Under the circumstances it seems to us that fairness to the applicant dictated that its request be granted; in any event, we believe that the interests of *26 justice will best be served by remanding the matter to the Commissioner for supplemental hearing during which such proof as may be material may be introduced and made part of the record by the Department, the applicant, the objector and other interested parties. Thereafter the Commissioner will be in proper position to render his considered judgment together with appropriate findings of basic facts which may be set forth in an opinion or otherwise. Cf. Petition of New York Water Service Corporation, supra; Perpente v. Moss, 293 N.Y. 325, 56 N.E.2d 726 (1944). See Radice v. New Jersey Department of Labor and Industry, 4 N.J. Super. 364, 368 (App. Div. 1949).
The decision of the respondent is reversed and the matter is remanded to the Department of Banking and Insurance for further proceedings in accordance with this opinion.