39 N.J. Super. 278 (1956)
120 A.2d 858
WHARTON SAND & STONE COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP OF MONTVILLE, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1956.
Decided February 29, 1956.
*280 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Milton A. Dauber argued the case for plaintiff-appellant (Mr. Richard H. Hughes, attorney).
Mr. Scott M. Long, Jr., argued the cause for defendant-respondent (Messrs. Long and Oram, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff appeals from a judgment for the defendant entered in an action in lieu of prerogative writ.
Plaintiff had made application to the defendant's board of adjustment pursuant to section 8D of defendant's zoning ordinance, seeking permission to install and operate machinery for the crushing and screening of quarry rock on certain land in Montville owned by the plaintiff. The board, after a hearing, recommended to the township committee that the permission sought be granted, though it attached to its recommendations ten conditions for the protection of the public interest. Plaintiff has accepted the conditions.
The matter then came before the township committee which, after a hearing, disapproved the board's recommendations by a vote of two to one. The committee did not state its reasons, though plaintiff specially requested it to do so. Thereupon plaintiff brought this action in lieu of prerogative writ to have the court set aside the committee's determination.
*281 It might be noted, in passing, that the board of adjustment found that plaintiff in 1954 was operating a quarry and a sand and gravel pit on its premises, as nonconforming uses. But no attempt is made before us to sustain that finding or to establish nonconforming uses protected by N.J.S.A. 40:55-48; and hence we do not deal with the matter. It might be observed further that the township committee seems to have passed only upon plaintiff's application to the board for permission to erect and operate the proposed machinery  and not to have made any decision as to whether the plaintiff may operate the quarry, excavate rock or undertake any blasting, or whether it may work the sand and gravel pit.
The fundamental question in the case is whether the committee acted arbitrarily.
We are concerned with section 8D of Montville's zoning ordinance, reading as follows:
"D. Sand, Clay and Gravel Pits and Stone Quarries
1. Sand, clay, gravel and stone or other natural mineral deposit or rock formations may be excavated, used and sold for commercial purposes in any District, provided the Board of Adjustment with the approval of the Township Committee after investigating, finds the project warranted, and grants a temporary permit subject to such restrictions as the Board of Adjustment shall deem necessary for the welfare of the Township.
2. The Board of Adjustment may refuse approval of crushing and screening operations or attach to its approval such requirements as it may consider necessary for the protection of the neighborhood and the public interests" (Italics added.)
The parties agree that the standards stated in section 9(1) of the ordinance (taken largely from N.J.S.A. 40:55-32) are to determine whether or not the project is "warranted" under section 8D.
Neither party mentions the point, but both parties seem to construe paragraph 2 of section 8D as authorizing crushing and screening operations only in case approval is secured not only from the board of adjustment but also from the township committee; and we will adopt this construction. Furthermore, it is to be noted that neither party gives much consideration to the question whether these operations can be *282 conducted only on a "temporary" basis as provided in paragraph 1 of section 8D.
Section 8D apparently allows not only quarries and sand and gravel pits but also screeners and crushers to be operated "in any District"  that is, in any zoning district of the township. Hence, properly speaking, we are not concerned with a variance, although the term appears frequently in the record before us. We are concerned, rather, with the granting of a permit or with an "approval of crushing and screening operations" (paragraph 2 of section 8D). N.J.S.A. 40:55-39(b) enables a municipal governing body, through ordinance, to confer upon the board of adjustment power to make "decisions upon * * * special questions," subject to the approval of the governing body, as was done here. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 419, 420 (1952).
We come then to plaintiff's contentions, and first to its contention that the action of the township committee is void because of a failure to make findings of fact.
If a board of adjustment grants relief under N.J.S.A. 40:55-39(c) or recommends relief under N.J.S.A. 40:55-39(d), it must make findings of fact. Ward v. Scott, 11 N.J. 117, 126 (1952). Indeed, it has been said that such a board must make findings of fact as to any matter confided to its quasi-judicial discretion. Izenberg v. Board of Adjustment of City of Paterson, 35 N.J. Super. 583, 588 (App. Div. 1955). But see National Lumber Products Co. v. Ponzio, 133 N.J.L. 95, 100, 101 (Sup. Ct. 1945), and cf. Keiser v. Inhabitants of City of Plainfield, 10 N.J. Misc. 496 (Sup. Ct. 1932), holding no findings to be required when the board denies relief.
In any event, in the case of the governing body of a municipality, where it disapproves a recommendation of the board, it has been held that it is not required to make findings. Sun Oil Co. v. City of Clifton, 16 N.J. Super. 265, 271, 272 (App. Div. 1951). It is indeed true that findings are required of an agency, such as the State Department of Banking and Insurance, in certain circumstances where the *283 administrative action affects a named party and is adjudicatory in nature  even though there is no statute requiring findings. Family Finance Corp. v. Gough, 10 N.J. Super. 13, 24 (App. Div. 1950); Household Finance Corp. v. Gaffney, 11 N.J. 576 (1953). But in the case of a governing body of a municipality under the circumstances presented here, the law has gone no further than to say that it would be desirable for that body to state its reasons. Sun Oil Co. v. City of Clifton, supra; cf. Adams Theatre Co. v. Keenan, 12 N.J. 267, 278 (1953), citing Family Finance Corp. v. Gough, supra; Annotation, 168 A.L.R. 13, 116-120 (1947); 62 C.J.S., Municipal Corporations, § 227 (13) a; 73 C.J.S., Public Administrative Bodies and Procedure, § 139; Davis, Administrative Law, 525-531 (1951).
It follows that the failure of the township committee to make findings is not reversible error. The only other question then is whether the facts before the trial court justified a judgment for the defendant.
It will be presumed that the township committee exercised its discretion properly. Stolz v. Ellenstein, 7 N.J. 291, 296 (1951). Hence the plaintiff cannot succeed in this action unless it establishes clearly that the committee's determination was unreasonable. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 416 (1952). This puts a heavy burden on a plaintiff when the committee will not state the reasons contained in its mind.
Without attempting to say what other courses may be open to a plaintiff which finds itself in such a predicament, we think in any event it may make out a prima facie case if it pursues the following course, namely: of so analyzing the matter as to lay before the court every substantial consideration which the governing body might in all likelihood be expected to rely upon as justifying its action; and then of establishing through the proofs that these considerations, whether taken one by one or all together, clearly furnish no reasonable basis for supporting the action taken.
We have not had much assistance from counsel in working up an analysis such as this. However, as it occurs *284 to us, the four principal considerations which might be thought of as justifying the committee's determination here, are as follows: the noise of operating the crushers and screeners; the dust therefrom; the danger and vibrations from blasting (assuming that the matter of blasting is involved in plaintiff's application here); and a conglomerate of factors that may or may not be important, depending upon the character of the community.
The findings of the board of adjustment serve to make out a prima facie case for the plaintiff with respect to the matter of noise and dust. The board required the crushers and screeners to be so enclosed and insulated as "to eliminate objectionable noise," and it further required a system, known by the trade name as "Aquadyne," to be installed which would "prevent objectionable dust from escaping" (italics added). Apparently the board supposed that all objection as to these items could be eliminated or prevented. As for the blasting, the minutes of the board, and its recommendation on the subject, serve to indicate that there was little actually to be feared on that score. However, insofar as blasting gives rise to disturbances in the comfort of the residents, it might better be dealt with under the fourth consideration, above stated, which may be entitled the character of the community.
Under this fourth topic, account should also be taken of other matters, such as the depreciation of property values, the intrusion of an industry into a wholly quiet residential neighborhood (if this be such a neighborhood), the attendant increase in trucking (if that would be a significant item here), etc. It would be one thing if this were a mining town or a rural area with few homes within miles of the proposed operations  and quite another thing if it were a fashionable, highly built-up suburb with perhaps only a little activity around the sand and gravel pit on plaintiff's lands of some 88 acres.
The committee must weigh the above-mentioned matters with others. Thus there is of course a public interest connected with quarrying. There is, furthermore, the question *285 whether there is an infringement upon plaintiff's right to enjoy the benefit of its own property, subject to the police power. In that last connection it is to be noted that the board made a finding that plaintiff's lands are not suitable for residential or farming purposes due to their topography and rock formation. Doubtless the board had reference to a portion of the property other than that on which a peach orchard stands, or once stood. The board's further assertion that there is a lack of access to the property requires explanation if the property has (as defendant claims) a frontage of a thousand feet on a public road.
We are very little informed as to the nature of the community. However, we do have before us an unusual ordinance which (subject to the approval of the board of adjustment and the committee) contemplates the carrying on of quarrying and apparently crushing and screening operations in any zoning district in this township, even in residential areas. Hence the ordinance by its very terms serves in part to enable plaintiff to make out a prima facie case on all the questions which center about the character of the community. Moreover, some slight indication that it would have been arbitrary for the committee to do other than grant the approval to plaintiff's application, is perhaps to be found in the following entirely unexplained statement by the board of adjustment:
"* * * there existed considerable doubt that denial of the application [of the plaintiff] would be legally sustained in a court * * *."
Offsetting all the above inferences, the township committee produces nothing. It has indicated no reason whatever for its action except that it had before it a petition signed by 1,100 residents (Montville's population in 1950 seems to be 4,159) opposing plaintiff's application.
The record before the trial court was thin. However, under the circumstances  and cases of this sort must stand on their own circumstances  we think plaintiff has made out a prima facie case. The proper course seems, therefore, to be this, *286 namely, to remand the case to the trial court to enable the township committee to submit proofs justifying its action. In addition, such proofs may be taken in support of the plaintiff's case as to the trial court may seem appropriate.
The question will present itself below, whether the action of the township committee should be determined on the basis only of the reasons actually in the minds of its members at the time it denied the application or in any event at the present time, cf. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995, 1999 (1946); In re Plainfield-Union Water Co., 11 N.J. 382, 396 (1953); or whether the trial court should go further and sustain the committee's action if there is any valid basis for it, regardless of the grounds that it may assign for that action, National Lumber Products Co. v. Ponzio, 133 N.J.L. 95, 101 (Sup. Ct. 1945). We do not pass upon the question as it has not been adverted to by counsel.
Reversed and remanded. Costs to abide the event.