59 N.J. Super. 419 (1960)
158 A.2d 54
MORRIS LUBLINER AND CONGREGATION LENATH HAZEDIC, APPELLANTS-APPELLANTS,
v.
BOARD OF ALCOHOLIC BEVERAGE CONTROL FOR THE CITY OF PATERSON AND AUGUSTUS HUTCHINS, T/A HUTCH'S TAVERN, AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1959.
Decided February 4, 1960.
*421 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Louis Schwartz argued the cause for the appellants-appellants (Schwartz & Schwartz, attorneys).
Mr. John E. Selser argued the cause for the respondent-respondent, Augustus Hutchins (Mr. Charles Turndorf, attorney; Mr. Gary O. Turndorf, on the brief).
Mr. William J. Rosenberg argued the cause for the respondent-respondent, Board of Alcoholic Beverage Control for the City of Paterson (Mr. Harry Smith, attorney).
Mr. Samuel B. Helfand, Deputy Attorney General, argued the cause for the respondent-respondent, Division of Alcoholic Beverage Control (Mr. David D. Furman, Attorney General).
The opinion of the court was delivered by GAULKIN, J.A.D.
Paterson's three-man Board of Alcoholic Beverage Control granted a place to place transfer to "Hutch's Tavern" by a two to one vote. Upon appeal the Director of the Division of Alcoholic Beverage Control affirmed. Appellants ask us to reverse.
Appellants' first point is that "the Director of the Division should have reversed the local A.B.C. Board on the principle *422 of res judicata." The discussion of that point will provide the factual background necessary for the disposition of the remaining grounds urged for reversal.
Hutch's Tavern has been located in rented premises at 34 Straight Street, Paterson since prior to 1947. The licensee, Augustus Hutchins, purchased a building at 39 Carroll Street, Paterson and in 1947 applied for a place to place transfer of the tavern to that address. There was strong opposition and after a hearing the application was denied. Hutchins appealed to the Director, who affirmed. In his "Conclusions and Order," dated May 16, 1947, the Director said:
"At the hearing on appeal it was established that the premises sought to be licensed are situated in a mixed residential and business neighborhood. The determination of the question as to the number of licensed premises which should be permitted in any such neighborhood is a matter confided to the sound discretion of the issuing authority * * *. In the instant case there appear to be seven licensed premises within the immediate neighborhood, with many residents in protest voicing their objections at the hearing before respondent and again on appeal. In addition written objection to the transfer was filed by the Principal and Parent Teachers Association of nearby School No. 6, and a petition bearing the names of 408 residents of the neighborhood objecting to the transfer was also filed with respondent. The reasons advanced by respondent are certainly valid, were based on facts existing, and indicate that the vicinity is already adequately supplied with licensed premises. By the same token, there is an absence of any compelling evidence of public necessity for an additional licensed premises in the neighborhood and, consequently, the action of respondent cannot be deemed arbitrary and capricious * * *."
Hutchins again made application for the transfer in 1948, in 1950 and in 1951. The local board denied each application but Hutchins took no appeal.
In 1953 Hutchins applied for the fifth time. This time the local board approved the application by a two to one vote, the affirmative votes being cast by new members of the board. The member who cast the dissenting vote had been on the board before 1947, and always opposed the transfer.
*423 The objectors appealed the 1953 approval to the Director of Alcoholic Beverage Control, who reversed. In his opinion, filed June 18, 1954, the Director said:
"Proper liquor control dictates that, in considering successive applications, an issuing authority should not be permitted to `back and fill' without sound reason for its action. The above principle is subject to the general rule that no governing body may tie the hands of its successors in matters involving the exercise of discretion. Northend Tavern, Inc. v. Northvale, et al., Bulletin 493, Item 5.
* * * The two members who voted in favor of the transfer gave as their reasons that respondent licensee had a good record and that a liquor license to be used in conjunction with a restaurant would serve the convenience of people of the licensee's race at the proposed location.
It appears from the prior appeals that the section of the City in which 39-41 Carroll Street is located is already adequately supplied with licensed premises. The same factual situation exists at the present time. This is the fifth application made for the same transfer with no material change in the facts. The petition opposing the transfer was signed by four hundred people, and a number of people opposed the transfer at the hearing held below. The testimony at all prior hearings was made part of the record herein. No real public need for a license at the new premises has been established. Under all the circumstances, I conclude that respondent Board abused its discretion and acted in an unreasonable manner in granting this application for transfer. I shall reverse the action of respondent Board."
In 1958 the sixth and present application for the transfer was filed. A hearing was held thereon in which the applicant and the objectors were again represented by counsel. The board (which now consisted of three new members, all appointed after 1954) reserved decision, stating that its members would inspect the neighborhood. On January 14, 1959 the board granted the application, again by a two to one vote. The objectors again appealed to the Director, who this time affirmed. It is from that affirmance that this appeal is taken.
The basic reason advanced by Hutchins in support of each of his six applications has been essentially the same. It is that Paterson does not have a high class restaurant for colored *424 people, and one is needed because of the large colored population. Hutchins proposes to fill that need at 39 Carroll Street but he says that such a restaurant without a bar is not economically feasible. His present location, where he is only a tenant, is too small to contain such a restaurant. Therefore, he asks leave to move to the building at 39 Carroll Street which he purchased for that purpose.
Among the objectors were the principal of the nearest public school, who wrote that she believed "such a place of business which many of our children will have to pass, can expose our children to unnecessary problems * * *"; the minister of a nearby church, who wrote that in his opinion it would "increase the congestion and delinquency that is already realized to an excessive degree in the area"; and the appellant Congregation, which wrote "that many of the elderly members * * * go to the synagogue three times a day to worship. They will suffer indignities if confronted by persons who loiter about a tavern." Appellant Lubliner stated at the hearing "that he resided in the area and was the principal of the Workmen's Circle School, at 22 Carroll Street, and * * * was opposed to the transfer to the proposed premises as the parents of the school children would object to their children passing the tavern several times a day."
Another minister, Rev. F.D. Bellamy, pastor of a church which had been established within 200 feet of the proposed location after the Director's 1954 decision, stated that he had "signed a waiver for Mr. Hutchins on the promise that Mr. Hutchins would assist him in securing a new church building." The validity of this waiver has not been challenged by the appellants, so we express no opinion on it.
It was not disputed that Hutchins' reputation has always been good, his tavern peaceful and his patrons well behaved. It is also not denied that the area about 39 Carroll Street is predominantly colored, although the degree to which this is so is not admitted. Francis A. Hutchins testified that it was 85% in 1958 as compared to 60% in 1953.
*425 On the last appeal before the Division appellants called only one witness, who testified that the number and location of the licenses in the area of 39 Carroll Street were unchanged (with one minor exception) since 1953; introduced in evidence certain maps and the records of the proceedings before the local board on the 1953 and 1958 applications (including the petitions and letters received by the local board); obtained a stipulation that "the previous proceedings in this Division so far as they are pertinent are to be referred to by the Director"; and then rested.
On June 16, 1959 the Director, adopting the opinion of the Hearer, affirmed the granting of the transfer. The opinion said:
"When denying the 1954 appeal, the Director in his decision, while recognizing that new members of the Board (as here) when exercising their discretion were not bound by the action of their predecessors on the Board, concluded that, nevertheless * * * four successive denials, based upon the oft repeated similar objections, had gathered such impetus that the mere opinion of the new Board that transfer of the license was in the public interest seemingly could not overcome the previous opinions to the contrary and, thus, their action was reversed even though the burden had shifted and rested on the appellant to establish that the grant of the transfer by the Board was erroneous. Cf. Protos v. Newark, & O'Neal, Bulletin 809, Item 5.
At the hearing before the local issuing authority on the present application, the evidence presented for and against the granting of the transfer was in large measure similar to that presented on the previous applications. The three commissioners personally inspected the area. They expressed concern over the lack of present parking facilities and received assurance that such facilities would be provided. One of the commissioners then stated: `We are concerned with the condition of the neighborhood as we found it during our inspection. I think the area would be improved if Mr. Hutchins were to conduct a high class type of tavern and restaurant.' This commissioner then offered the resolution granting the application conditioned upon the completion of the proposed alterations of the premises. Another commissioner then stated: `I will not second the motion for approval. This neighborhood does not require another tavern. I would suggest that he put a restaurant in there first if that is what he wants to run. That neighborhood can't support a high class restaurant * * *.' The resolution was then adopted by a two-to-one vote."
*426 Then the opinion states the respects in which the Hearer found the evidence to be different from that before the Director when the 1954 opinion was written:
"At the present hearing on appeal, the location of the liquor licenses in the area was indicated in a sketch. It appears that the nearest tavern to the proposed location is distant 1040 feet, with other taverns being at greater distance and that there are three package store licenses distant 100, 300 and 1000 feet, respectively, from such location. Evidence has been presented by a person familiar with the neighborhood that, from casual observation, there has been, since 1954, a larger percentage of persons of applicant's race residing in the area. The applicant caused an investigation to be made which he maintains discloses that school children are a minor problem so far as relates to the location of his tavern at the premises."
The opinion then decided the question of res judicata as follows:
"It is interesting to note that in Auerbach v. Newark et als. Bulletin 1178, Item 1, it appears that a previous application for transfer of a `C' license to the area was denied by the local issuing authority and such denial affirmed on appeal by the Director on the ground that such location was too close to a school and a public housing project and there was a considerable number of liquor outlets available in the vicinity to supply the needs of the neighborhood; and that the Director came to a similar conclusion on application to transfer a state beverage distributor's license to the area (although later such application was granted). On this basis, the Hearer in the Auerbach case, when considering the appeal from the grant of a transfer of a `C' license to such area, reported that there had been no change for the better either in increase of residents in the area or improvements in business establishments; that the transfer of the license was objected to by various licensees and residents of the area on grounds similar to like objections to the two other applications above referred to; and that the record disclosed that the local and state issuing authorities had consistently held that there was no need or necessity for another liquor license in the area in question.
Accordingly, despite the fact that the members of the respondent Board had not held office at the time the other applications were considered, the Hearer stated that, since there was no room for latitude of opinion, it was arbitrary or unreasonable for members of the successor issuing authority to arrive at a conclusion contrary to that from the evidence before them and, hence, recommended *427 reversal of the transfer, citing the Hutchins case reported in Bulletin 1022, Item 4.
The Director did not accept the Hearer's Report, being of the opinion that the previous expressions of the opinion by the licensing authorities that there was no need for an additional license in the area was not of such conclusive nature as to foreclose or preclude the present successor Board from exercising its independent discretionary authority to determine whether it is advisable to locate a `D' license in the area where there were five `C' licenses; that the previous denial of transfer of a `C' license to the area was not an overwhelming or repeated official attitude on the subject sufficient to deprive the successor Board of the authority to formulate its own conclusions whether or not to grant the transfer. The Director affirmed the grant of the transfer.
In the instant case, the record of the action of the local Board on these applications, in sequence, is four denials of transfer and two grants of transfer, the latter two within the past five years. To again disregard the sentiment expressed by two independent respondent Boards is to maintain an adamant attitude that the passage of twelve years with the normal changes in the area to be expected is insufficient to overcome the past denials of transfers. In other words, that such denials are a bar in perpetuity or perhaps until the number of grants equals the number of denials. I do not think such is a reasonable conclusion."
Appellants argue that "[d]eterminations by administrative agencies such as the Division of Alcoholic Beverage Control where preceded by notice and hearing, have attained quasi-judicial status with the res judicata incidents of common law judgments," citing Russell v. Board of Adjustment of Tenafly, 31 N.J. 58 (1959), and hence "[t]he determination of 1954 * * * should be honored as a valid judgment by the Director and this court. Unless new evidence was presented in 1959 of a real public need for a license at the new premises, the principles of res judicata should apply."
Appellants contend that no such "new evidence was presented"; that the view by the members of the local board is immaterial because the board did not state for the record what it saw; there was no evidence to support the Director's intimation that during the twelve years since the first application there were "numerous changes in the area" and, on the contrary, the evidence showed there were no changes; *428 the testimony mentioned by the Director "by a person familiar with the neighborhood that, from casual observation, there has been since 1954 a larger percentage of persons of applicant's race residing in the area" was incompetent because it was "from casual observation" and, even if competent, was not sufficiently substantial to support the Director's judgment because it was not corroborated by evidence of actual count or other dependable data. (However, it must be noted that there was evidence that 39 Carroll Street had six out of sixteen white tenants in 1953 but only one in 1958, and that the same was approximately true of the building next door.) As to the evidence of the actual distance  1,040 feet  to the nearest tavern mentioned by the Director, appellants say if the exact number of feet was not in evidence in the previous proceedings the existence of the tavern and its location were. Therefore, conclude appellants, when the Director reversed he "collaterally attacked his own determination of 1954 by intimating that it was impelled by the impetus of the previous denials of transfer rather than upon the facts established at the hearings."
The extent to which common-law concepts of res judicata should be applied to determinations of administrative agencies is a troublesome and unsettled question. Central Home Trust Co. v. Gough, 5 N.J. Super. 295 (App. Div. 1949). In that case Judge (now Justice) Jacobs said "we find many expressions in the federal cases that, in general, rules of res judicata will not be applied to preclude an administrator from departing from an earlier determination." 5 N.J. Super., at page 298. However Judge Jacobs pointed out at page 299 that
"In New Jersey, as in many of the other states, Courts have sought to rest their decisions upon concepts which distinguish `quasi-judicial' action of administrative agencies from their `quasi-legislative or executive' and `administrative or ministerial' action, holding that quasi-judicial determinations have the res judicata incidents of common law judgments. See Finnegan v. Miller, 132 N.J.L. 192, 195 (Sup. Ct. 1944). We find these quoted terms troublesome since their precise meaning is unclear and courts frequently *429 differ in their judgments as to whether particular action is quasi-judicial or otherwise."
Then Judge Jacobs added this pregnant sentence (at pages 299-300; emphasis ours):
"It has been suggested, with much force, that a more satisfactory approach would be to ascertain, from the terms of the organic act governing the agency and with particular regard to the nature of the proceeding and its effect upon private interests and the provisions for notice, hearing, finality and review, whether the Legislature contemplated that the administrative determination should attain the status of a common law judgment with its customary attributes. Cf. R.S. 34:15-58; Mangani v. Hydro, 119 N.J.L. 71 (E. & A. 1937)."
In Russell v. Board of Adjustment of Tenafly, supra, the Supreme Court said, 31 N.J., at page 65, "[r]es judicata is applicable to actions heard by a zoning board of adjustment." Most of the reasons for this holding (some of which will be mentioned later) do not apply to actions of local liquor licensing authorities, basically because the statutes permit municipal liquor boards to exercise far more discretion than zoning boards, yet with far fewer indispensable procedural requirements. Compare the terms of the zoning law (R.S. 40:55-37 to 44) with those of the Alcoholic Beverage Law. R.S. 33:1-1 et seq.; Compare also Grundlehner v. Dangler, 29 N.J. 256, 270 (1959); Tomko v. Vissers, 21 N.J. 226, 239 (1956) and Wharton Sand & Stone Co. v. Montville Tp., 39 N.J. Super. 278 (App. Div. 1956) with Borough of Fanwood v. Rocco, 59 N.J. Super. 306 (App. Div. 1960) and Downie v. Borough Council of the Borough of Somerdale, 44 N.J. Super. 84 (App. Div. 1957).
For example, in Russell the Supreme Court said "the function of boards of adjustment * * * is essentially factfinding as opposed to policymaking," whereas the function of liquor boards in licensing is the reverse. Consequently, unlike zoning boards and similar agencies, the liquor board does not, as a rule, need to make findings of *430 fact or even to articulate its reasons as a condition precedent to the valid exercise of its discretionary power. Compare Fanwood v. Rocco, supra, with Tomko v. Vissers, supra; cf. Family Finance Corp. v. Gough, 10 N.J. Super. 13 (App. Div. 1950) and Pennsylvania Railroad Co. v. New Jersey State Aviation Commission, 2 N.J. 64 (1949). Of course, it is preferable and, on review, very helpful when the liquor board does make the basis of its action explicit, but it is not mandatory. Wharton Sand & Stone Co. v. Montville Tp., supra; Family Finance Corp. v. Gough, supra; Tomko v. Vissers, supra.
These are some of the reasons why res judicata may not be applied in liquor license cases as readily as in zoning cases. Yet even in zoning cases the Supreme Court has said that whether res judicata or principles akin thereto, such as collateral estoppel, shall be applied "is for the board, in the first instance, to determine * * *. This finding, as any other made by the board, will be overturned on review only if it is shown to be unreasonable, arbitrary or capricious." Russell v. Board of Adjustment of Tenafly, supra, 31 N.J., at page 65.
That does not mean that such principles may never be applied to liquor board proceedings. On the contrary, they may and should be. Otherwise an applicant would be able, with repeated applications, to wear down the objectors and, perhaps, even the liquor board itself. Opposing such applications is not only time consuming but frequently expensive, and few citizens can afford the time, effort and expense of resisting repeated applications. However (to paraphrase what the Supreme Court said in Russell, supra), how, to what extent, and under what circumstances res judicata and kindred principles should be applied to liquor cases should be left to the administrative agencies, subject to the same review as their other determinations.
Naturally, the application of those principles will vary with the subject matter involved. Cf. Fanwood v. Rocco, supra. When the issues require findings of fact, as in the *431 "second class" of cases defined in Fanwood, there may be instances in which those principles should be applied as freely as in zoning cases, but the farther the issues move away from fact and into the other areas of their power and jurisdiction the more unfettered the local boards and the Division are entitled to be. As was said in the Note, "Res Judicata in Administrative Law," 49 Yale L.J., 1250 (1940), at p. 1278:
"* * * the doctrinal utilization of res judicata to hold administrative agencies without power to correct their own prior determinations frequently results in the frustration of a manifest legislative desire to secure administration free of legal strait-jackets. Where legislative policy remains unexpressed, the desirability of permitting agencies to reverse their former action depends principally on the nature of the substantive law administered and on the procedural character of original determinations. In this connection, nevertheless, a judicial policy of laissez-faire seems preferable. Administrative agencies are by far the best qualified to develop their own res judicata practices out of intimate acquaintance with their individual problems. Furthermore, `interference by the courts is not conducive to the development of habits of responsibility in administrative agencies.'"
See also Central Home Trust Co. v. Gough, supra, 5 N.J. Super., at page 301 in which the court said: "* * * administrative agencies have inherent power, comparable to that possessed by the Courts * * *, to rehear and reconsider * * *."
The Division has already worked out such principles for its own guidance and for the guidance of local boards and has applied them. Examples may be found in Rajah Liquors v. Division of Alcoholic Beverage Control, 33 N.J. Super. 598, 602 (App. Div. 1955); certification denied 18 N.J. 204 (1955); Auerbach v. Newark, et als., ABC Bulletin, 1178, Item 1 (1957); Enno v. Tp. of Howell, ABC Bulletin, 1120, Item 6 (1956); Northend Tavern, Inc. v. Northvale, ABC Bulletin, 493, Item 5 (1942).
We may reverse the determination of the Director in a situation such as this only if what he did was so "clearly *432 against the logic and effect of the presented facts" that "it is shown to be unreasonable, arbitrary or capricious." Russell v. Board of Adjustment of Tenafly, supra, 31 N.J., at page 67; Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs. of City of Hoboken, 135 N.J.L. 502, 511 (E. & A. 1947); Fanwood v. Rocco, supra; Rajah Liquors v. Division of Alcoholic Beverage Control, supra.
Applying these principles to the facts at bar, we cannot say that when the Director refused to treat his 1954 decision as conclusive of the present case, his judgment was unreasonable, arbitrary or capricious. In 1954 the case presented to the Director a situation in which the applicant had applied four times before in five years and had been turned down each time, the last time being about two and a half years before the application involved in the 1954 appeal was granted. The present application, on the other hand, was made over seven years after the last denial by the local board (May 23, 1951) and over four years after the Director's 1954 decision. In 1954 the Director said that when the local board granted the application after having refused the four previous similar applications in such recent, rapid and almost unbroken succession the "* * * Board abused its discretion and acted in an unreasonable manner * * *." When, over four years later, the Director found the local board still approved the transfer, was he obliged to say again that the local board abused its discretion? Did not the Director have the right to say, when the local board persisted in its opinion for so long in spite of his previous reversal, that he would yield to its judgment? We think it was in his discretion to do so, knowing that "local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications * * *." Ward v. Scott, 16 N.J. 16, 23 (1954); Fanwood v. Rocco, supra.
*433 Appellants argue that "the resolution of the local board" and "the conclusions and order of the Director" were invalid because they did not contain "adequate findings of fact" and did not state that those findings proved "that it is in the public interest and there is a public necessity" for the transfer. Appellants argue that such proof, findings and conclusions are a sine qua non to a valid transfer. That is not true. Such findings may be advisable and useful but they are not essential. Cf. Fanwood v. Rocco, supra; Family Finance v. Gough, supra.
Appellants argue that the approval of the transfer was illegal and erroneous because the Paterson zoning ordinance prohibits a tavern at this location. It is not clear from the evidence that the ordinance does so provide, but even if it does that does not make the grant of the transfer improper or its approval by the Director error. The issuance of a license or the grant of a transfer does not permit the licensee to operate without complying with all applicable statutes and ordinances, including zoning ordinances, building codes, health codes and the like. It may be that Hutchins will need a variance or other relief before he can operate a tavern at 39 Carroll Street, but he is not required to obtain it before the grant of the transfer. Cf. Passarella v. Board of Comm., 1 N.J. Super. 313 (App. Div. 1949).
Finally, appellants argue that, apart from the question of res judicata, upon the facts the approval of the transfer by the local board was an abuse of its discretion, and that the Director should have so found; and that we should declare the Director's failure to do so reversible error. In a case such as this "we take into consideration and give due weight to the fact that the Director has special expertness and broad experience in this general field." Fanwood v. Rocco, supra. The appellants have failed to show that his judgment was so wide of the mark as to become reversible error.
Affirm.