29 N.J. Super. 103 (1953)
101 A.2d 861
JAMES AND ALICE PRICE, TRADING AS MILLBURN INN, APPELLANTS,
v.
THE EXCISE BOARD OF THE TOWN OF MILLBURN, RESPONDENT, AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY, INTERVENING-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1953.
Decided November 5, 1953.
*104 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Paul N. Belmont argued the cause for appellants (Messrs. Van Riper & Belmont, attorneys).
Mr. Reynier J. Wortendyke, Jr., argued the cause for the respondent, The Excise Board of the Town of Millburn.
Mr. Samuel B. Helfand, Deputy Attorney-General, argued the cause for the intervening-respondent, Division of Alcoholic Beverage Control in the Department of Law and Public Safety (Theodore D. Parsons, Attorney-General).
The opinion of the court was delivered by EWART, J.A.D.
This is an appeal from an order made June 12, 1953 by the Director of the Division of Alcoholic Beverage Control affirming the action of the Township Committee of the Township of Millburn, sitting as an excise board, in having denied appellants' application for a plenary retail consumption license for premises situate at No. 5 Old Short Hills Road in the Township of Millburn.
The premises for which the application was made consist of a very old dwelling house in which appellants have operated for upwards of seven years past a restaurant under the name of "Millburn Inn." The premises have never heretofore been licensed to sell intoxicating beverages. It is situate on the same side of the street and adjacent to the Millburn High School, there being less than 200 feet in distance separating the inn and the high school building.
*105 An earlier application for a license for the same premises was made by the same applicants on December 19, 1951. That earlier application was likewise denied on January 7, 1952 upon a technical ground, viz., upon the ground that there was less than 200 feet distance from the nearest entrance to the school to the nearest entrance to the inn, measured in the normal way a pedestrian would properly walk. R.S. 33:1-76. No appeal was taken from the denial on January 7, 1952. Instead, the applicants constructed a cinder block wall effectively closing that entrance to the inn which was nearest the high school building and erected a fence part way across the entrance to the auto parking lot used by the inn's patrons so that, as a result of these structural changes the distance from the entrance to the inn to the nearest entrance to the high school building, measured in the normal way a pedestrian would properly walk, was extended to a distance of 205.8 feet. There was no change in the location of either the inn building or the high school building. Thereupon, appellants renewed their application for a plenary retail consumption license, a hearing was had before the township committee on October 20, 1952, and the three members of the committee then present at the meeting voted unanimously to deny the application. From that denial the applicants appealed to the Director of the Division of Alcoholic Beverage Control who affirmed the action of the township committee by an order made June 12, 1953, as aforesaid, and from that decision of the Director this appeal has been prosecuted.
No question has been raised as to the character or fitness of the applicants for the license.
The basis upon which the committee denied the second application for the license is set forth in the testimony of Clarence A. Hill, chairman of the township committee, as follows:
"Q. Will you state to the Director, through the Hearer, the grounds upon which you cast your vote against the application? A. Well, primarily on the ground that this inn is much too close to the high school. The high school happens to be the next door *106 neighbor of the inn. It is the next property to the inn. And we didn't consider it a proper location for a place serving liquor."
And later the same witness was questioned as to the effect of the structural changes made by the applicants for the license between the denial of the first application on January 7, 1952 and the filing of the second application at a later date, with the following result:
"Q. What, if any, effect upon your judgment, as one of the members of the local issuing authority, in denying the latest application did the presence of those changes to the premises in question have? A. I don't think they changed the situation one bit. In effect, we still have an inn which is in exactly the same position that it was when the prior application was denied. And nothing that has been done by way of installing a couple of rails in a driveway, or anything else for that matter, has removed the inn from its too close proximity to the high school."
And on cross-examination the witness was questioned as to the effect upon him of protests lodged with the committee by the board of education and by certain civic associations and the following testimony was adduced:
"Well, you were influenced, I take it, to a certain extent by what you thought were the views of certain of your constituents? A. In this particular case I can't say that I was influenced unduly, although, naturally  Q. I don't mean unduly. A. Well, all right. I would say that in an official action, if you do your sworn duty, you have to consider the wishes of the people. But in this case where I personally feel there is a much larger issue involved, I think it is one that has been indicated in the State Laws, as at least a yardstick of what it generally considered the proper relationship of places that serve liquor to places of education, and I believe that insofar as my decision was concerned, that was the controlling influence.
Q. Do I take it, Mayor, that you mean by that, that you felt that in view of the fact that the State Law said there should be no licensed place within 200 feet of the school, that this came within that restriction? A. In addition to that I had my own conviction that a place that serves liquor has no place next to a high school, or other school."
And another member of the committee, William B. Gero, testified as follows:
*107 "Q. Now, the minutes say that you said that after due and careful consideration of this application, and referring to the first application made by the same parties and the then normal and natural entrance to the premises sought to be licensed, noted that the entrance had now been moved more than 100 feet to a position by extending the fence so a pedestrian would now have to walk along the fence, thence through the new entrance, and then back toward the building. This change has not altered the essence of the problem and the building was still in the same place and it was your opinion that the application should not be granted. Does that represent what you said there, Mr. Gero? A. I think so.
Q. I take it that what that refers to is to the discussion which took place at the first hearing on the first application as to whether or not the inn was within 200 feet of the high school? A. That was one factor. That is correct.
Q. Now, isn't that what you referred to when you said that you considered the first application and the then normal and natural entrance to the premises, and that the new entrance had not altered the essence of the problem? A. The only thing that had been changed between the first application and the second application was this entrance.
Q. Yes. That's correct. A. The other factors stayed the same.
Q. And you felt, did you not, that the changing of the entrance and making it a longer distance to walk from the high school to the inn did not change the distance question which was discussed at the first meeting? A. My thought was that it was an attempt to get a technical compliance, but did not change the essence of the problem.

* * * * * * * *
Q. I wouldn't ask this question if it had not been brought out on direct examination. Let's disregard any feeling which we might have or observation which we might have because of our personal situation. Do you feel that the serving of liquor at meals in the Millburn Inn would be injurious in any way to the students in that high school? A. Well, the serving of liquor in the immediate vicinity of a high school carries to that area an influence which it would be just as well, and it is recognized by the law in putting restrictions on it, if it could be avoided."
It is well settled in this State that the issuing authority (in this case the township committee) is vested with a sound discretion in the granting or refusing to grant licenses for the sale of intoxicating beverages and that the court should not interfere with the actions of the constituted authorities unless there has been a clear abuse of discretion. Bumball v. Burnett, 115 N.J.L. 254 (Sup. Ct. 1935); Zicherman v. Driscoll, 133 N.J.L. 586 (Sup. Ct. 1946); *108 Biscamp v. Township of Teaneck, 5 N.J. Super. 172 (App. Div. 1949). Cf. Ring v. Mayor and Council of Borough of North Arlington, 136 N.J.L. 494, 498 (Sup. Ct. 1948), affirmed 1 N.J. 24 (1948), appeal dismissed 335 U.S. 889, 69 S.Ct. 250, 93 L.Ed. 427. And the burden of proving an abuse of discretion rests upon the appellants. Bumball v. Burnett, supra; Biscamp v. Teaneck, supra; Ring v. North Arlington, supra.
Appellants also allege that the committee unlawfully discriminated against them in that two other establishments have been licensed for many years to sell intoxicating beverages in the township, one known as the Chanticler described as being located across the street from a parochial school, although what distance there may be separating the parochial school building from the Chanticler does not appear, and the other being a tavern known as Mario's, located on the same street and the same side of the street as the appellants' inn, but described as being more than 500 feet further away from the high school than the location of the appellants' inn. It was claimed that school children attending the Millburn High School pass Mario's Tavern in large numbers. Be that as it may, and even assuming that the issuance of licenses to the Chanticler and to Mario's Tavern were ill-advised, that circumstance would not entitle the appellants here to a license. Biscamp v. Teaneck, supra; Shipman v. Township of Montclair, 16 N.J. Super. 365, 370 (App. Div. 1951).
We find that the township committee acted within its discretionary authority in denying appellants' application for a license under the circumstances shown by the proofs to exist; that the proofs do not support the charge that appellants have been unjustly discriminated against as compared with the establishments known as the Chanticler and Mario's Tavern; that appellants have not carried the burden of establishing by the proofs any abuse of discretion on the part of the Township Committee, and that by reason of these conclusions the order appealed from should be affirmed.