PASSAIC COUNTY RETAIL LIQUOR DEALERS' ASSOCIA-
TION, APPELLANT-APPELLANT, v. BOARD OF ALCO-
HOLIC BEVERAGE CONTROL FOR THE CITY OF
PATERSON, AND BERTELLI'S LIQUOR STORE, INC.,
AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL,
RESPONDENTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued August 15, 1955—Decided October 3, 1955.

188

Before Judges SCHETTINO, HEGARTY and SPEAKMAN.

*Mr. Robert Goodman* argued the cause for appellant (*Mr. Theodore D. Rosenberg,* attorney).

*Mr. Ervan F. Kushner* argued the cause for respondent Board of Alcoholic Beverage Control for the City of Paterson.

*Mr. Samuel B. Helfand* argued the cause for respondent Division of Alcoholic Beverage Control (*Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

SCHETTINO, J. S. C. (temporarily assigned). Appeal is taken from the action of respondent New Jersey Division of Alcoholic Beverage Control in approving the granting of an application by the Board of Alcoholic Beverage Control of the City of Paterson for transfer of a plenary retail consumption license from person to person and place to place.

The Paterson Board of Alcoholic Beverage Control granted the application of respondent, Bertelli's, Inc. (then Bertelli's Liquor Store, Inc.), for transfer of a plenary retail consumption license from Edward A. Levy, receiver in bankruptcy for the 230 Market Street Corporation, to respondent Bertelli's, Inc. (formerly Bertelli's Liquor Store, Inc.) and from premises 230 Market Street to 218-230 Redwood Avenue, Paterson, premises then in the process of construction. Because the proposed premises, according to a plan previously submitted, would not constitute "a *bona fide* barroom," the State Director of Alcoholic Beverage Control, on appeal by this appellant remanded the matter on May 21, 1954 to the local board "for further action in accordance with the foregoing conclusions." The Director also stated that "The entire proposal for the erection of a small bar in the rear of the premises and a large 'package goods de-

partment' in the front part thereof is obviously for the purpose of evading the spirit and intention of the present law in obtaining a privilege to which it is not legally entitled." He suggested that the name of Bertelli's Liquor Store, Inc. referred to a "package goods store" rather than to a tavern and thus might mislead the general public.

On June 3, 1954 respondent Bertelli's, Inc., under the name of Bertelli's Liquor Store, Inc., filed application with the Paterson Board of Alcoholic Beverage Control for a renewal of the license in question. At a meeting of the board held on June 9, 1954 Bertelli submitted an amended plan. Certain "remarks" were addressed to the board by the attorneys for Bertelli and an objector, but no hearing was held nor testimony taken. An announcement was made that "this matter would be continued at a later date."

On June 3 and 10, 1954, legal newspaper advertisements, pursuant to the June 3 renewal application, were published. These advertisements were later deemed unacceptable by the local board in that they did not include a notice advising that the plans and specifications of construction were filed at the city board's office available for public inspection. New, corrected advertisements were published by respondent corporation in another newspaper on June 22 and June 29, 1954. The June 3 application was not amended to show the new dates of publication or the change of newspaper. On June 29, 1954 a document dated June 16, 1954, certified by the Secretary of State of New Jersey, was filed with the city board on behalf of the applicant indicating a change of corporate name to Bertelli's, Inc.

At a special meeting on June 30, 1954, at which the appellant's attorney was present and participated in the discussion, argument was had on the amended plan, as a result of which the board reaffirmed its previous grant of the transfer "effective immediately for the sole purpose of permitting [a] renewal" and directed that the license shall not be issued until satisfactory completion of the premises. The record before us fails to disclose any objection to the renewal made by appellant.

We first dispose of the question as to just what is the subject matter of the appeal. Appellant's brief and oral argument are replete with reference to alleged reversible action on the part of the local board and the State Director in granting and approving the *renewal* and the *transfer* of the license. However, appellant's notice and petition of appeal to the Director state that its plea is for a reversal of the local board's action in approving the *transfer*. Appellant's references to transfer appear several times; no reference is made to renewal. The answers filed by the local board and Bertelli refer to transfer and no reference is made to renewal. The conclusions and order here appealed from refer solely to transfer, as did the conclusions and order of the first appeal to the State Director in this case.

We will limit our determinations on appeal to what was considered below and not what is outside the appeal record.

*R. S.* 33:1-12.23, reads as follows:

"The holder of a plenary retail consumption license or a seasonal retail consumption license, after the effective date of this act, may sell and display for sale alcoholic beverages in original containers for consumption off the licensed premises only in the public barroom of the licensed premises, such barroom being a room containing a public bar, counter or similar piece of equipment designed for and used to facilitate the sale and dispensing of alcoholic beverages by the glass or other open receptacle for consumption on the licensed premises; * * *."

with a proviso that does not apply since the license in question does not contain the "broad package privilege" notation set forth in *Rule 4, State Regulations No. 32.*

In the prior appeal a grant of the transfer of this license was remanded for further consideration of the question of whether or not the applicant's proposed premises and method of conducting its business would comply with the statute and the regulations.

At that time the plans filed with the local board showed the building proposed to be licensed as having a frontage of 14 feet 6 inches and a length of 65 feet; that approxi-

mately four feet from the front entrance and adjacent to each wall divers shelves were to be erected; that the shelves to the left were to be 24 feet in length and the shelves to the right 21 feet in length; that at the end of the right shelving and at right angles thereto a counter about eight feet long and two feet wide was proposed to be erected; that approximately four feet behind this counter toward the rear of the premises a refrigerator eight feet by eight feet was to be installed; that to the left of the refrigerator and beyond the shelving attached to the left wall a small table, approximately two and one-half feet by two feet, was to be placed; that about four feet beyond this table there was to be erected a ten-foot curved bar, the short curved end thereof attached to the left wall, which bar would be approximately eight and one-half feet from the rear of the building. Some distance beyond the refrigerator toward the end of the building another table was to be placed. The counter in front of the refrigerator was to be used solely for wrapping package goods for off-premises consumption. The plans did not show whether or not any plumbing was to be installed in connection therewith. It was the applicant's intention to dispense liquor over the bar situated in the rear of the premises but, if a patron happened to be in the front of the store and desired a drink of alcoholic beverages for immediate consumption, it would be served to him in the front.

On June 9, 1954, a new plan was submitted by Bertelli showing the enlargement and relocation of the bar. According to the new plan the bar had an over-all length of 20 feet, with a sink, a ten-foot back bar, and eight bar stools and had been moved from the rear part of the building behind the refrigerator to the front of the refrigerator in plain view of anyone entering the front door. The plan shows 24 feet of shelving on one side of the room and 27 feet of shelving on the other side. The Director found:

"From the foregoing it is clear that the factual situation has changed materially since the matter was remanded to respondent Board. Neither the premises nor the manner of conducting the

business is open to the attack which resulted in the remand. It now appears that the proposed premises, if completed and conducted as indicated by the plans and the testimony, will comply with the statute and regulations."

The appellant argues that the amended plans were not materially and substantially altered so as to warrant the Director's conclusions and order; that it is true that respondent corporation did to a degree rearrange the rear portion of his premises, and the corporate name was suitably changed, but contends that the root of the "evil" was in no way diminished. On the contrary, the amended plans call for an enlargement of the "packaged goods" area. Instead of the first 24 feet of the store being solely devoted to the vending of "package goods," 27 feet were allocated for this purpose. The attempted subterfuge was exaggerated instead of being eliminated.

Appellant also contends that installing a nominal bar and related fixtures in a "package store" does not convert the premises into a "public barroom" within the true spirit and meaning of the statute; that the statute was designed to prevent the emergence of "package stores" at premises possessing a plenary retail consumption license without the "broad package privilege," and that the physical arrangement of the premises can only lead one to conclude that the bar in question is not installed with the intent of maintaining a *bona fide* barroom, but it is instead, designed merely to facilitate the operation of a "package store" and thereby evade the spirit and intention of the law.

The action of the municipal board and the action of the director rest in sound discretion and may not be disturbed by this court in the absence of a showing of an abuse of that discretion, *Bivona v. Hock*, 5 *N. J. Super.* 118, 120 (*App. Div.* 1949); *Zicherman v. Driscoll*, 133 *N. J. L.* 586 (*Sup. Ct.* 1946).

We are asked to reverse the exercise of a legislative grant to the local board and the Director and to hold that there was an abuse in the exercise of a discretionary power respecting transfers under *R. S.* 33:1–26. The Legislature

has vested wide powers in the regulatory authorities in order to control a field in which evils have arisen and may easily arise. *In re Larsen*, 17 *N. J. Super*. 564, 571 (*App. Div.* 1952). The legislative mandate "is intended to be remedial of abuses inherent in liquor traffic and shall be liberally construed," *R. S.* 33:1–73.

Guided by these statutory and judicial authorities, we are called upon to decide a narrow issue as to whether or not the determination that the revised plans complied with the requirement of "public barroom" as defined in *R. S.* 33:1–12.23 which provides in part:

"* * * such barroom being a room containing a public bar, counter or similar piece of equipment designed for and used to facilitate the sale and dispensing of alcoholic beverages by the glass or other open receptacle for consumption on the licensed premises; * * *."

The constitutional attack on this provision to the effect that a power is here delegated to an administrative agency without setting up reasonable standards to guide the agency was rejected by Judge Colie for the Appellate Division in *Coral Lounge and Cocktail Bar, Inc., v. Hock*, 5 *N. J. Super*. 163, 166 (*App. Div.* 1949). We feel that there is sufficient definitive admeasurements of what is a "public barroom" as set forth in *R. S.* 33:1–12.23. True, each application must be considered in the light of the plans and other specific facts presented.

Our examination and comparison of the original and amended plans bring us to the same conclusion as did the Director, namely, that the applicant had complied with *R. S.* 33:1–12.23 and that we find no abuse of discretion in the local board and the Director.

Appellant raises a constitutional point in that it was denied due process of law. Appellant contends that the uncontradicted evidence reveals that the local board on June 9, 1954, without notice to parties in interest, conducted a partial hearing and heard material testimony from representatives of the respondent corporation. Appellant, a party in interest,

was not present. It also contends that the chairman of the local board, at his "own expense" and on his "own time," brought the amended plans of the proposed barroom to Newark and privately consulted with the Director and Assistant Director of the State Division of Alcoholic Beverage Control. In response to his request, they gave their "oral opinion" as to the acceptability of those specific plans, which opinion was immediately reported to the local board who then proceeded to adopt it.

As a result of this private meeting and the action taken therein, on appeal to the State Division of Alcoholic Beverage Control from the local board's ruling the Director and Assistant Director were placed in the position of reviewing their own previous decision. Under such circumstances, is there a fair opportunity for a reversal? Appellant concludes that such action deprives it of due process of law.

Our examination of the record does not bear out appellant's contentions. No hearing was held or testimony taken on June 9, 1954. The argument that the board, on June 9, 1954, "conducted a partial hearing and heard material testimony" finds no support in the record. The attorney for the applicant appeared before the board for the purpose of submitting the amended plan, and certain "remarks" were addressed to the board by him. The record shows that appellant's attorney was corrected before the state hearing officer when he referred to "testimony" and he agreed with the local board clerk's substitution of "remarks" in place of "testimony." The plan was "made part of the records" and it was stated that "this matter would be continued at a later date." At the meeting of June 30 the appellant's attorney participated in the discussion before the board.

Shortly before June 30 the chairman of the local board went to the State Director and requested an opinion with regard to the definition of a *bona fide* barroom. He was told that no dispositive opinion could be rendered since the Director's "position requires that he consider appeals on any action of a municipal board." The Director's conclusions

and order state that "this matter was not prejudged," that he "did not pass or rule upon the new plan," and that the chairman was advised that the board must "make its own determination" which would be "subject to appeal to the Director."

Appellant's position cannot be sustained. *R. S.* 33:1–23 directs the Director to cooperate with municipal licensing authorities in enforcing the law, and *R. S.* 33:1–39 requires the Director to issue instructions for the guidance of municipal licensing authorities. In *Rutherford Lodge No. 547, B. & P. O. E. v. Hock*, 1 *N. J. Super.* 223, 227 (*App. Div.* 1949), the court, after finding that letters written by the then Commissioner expressing his opinion with respect to certain issues in the case "did not constitute a final decision or action by him and, therefore, are not reviewable," stated:

"For many years the Commissioner [now Director] has adopted the practice of furnishing his opinions and views to issuing authorities, licensees and others who have communicated with him and who have posed certain questions and problems with which they have been faced in connection with the administering of the Alcoholic Beverage Law and the applicability thereof with respect to the conduct of their licensed business. Such advisory opinions have served a useful purpose in that they have clarified many perplexing and confusing problems encountered by the issuing authorities, licensees and others affected by the Alcoholic Beverage Law. These advisory opinions of the Commissioner have had a salutary effect and have been conducive to a satisfactory and successful administering of the Alcoholic Beverage Law by the Commissioner of Alcoholic Beverage Control, to whom that task is entrusted by the express provisions of the Act. *R. S.* 33:1–23."

In *Central Home Trust Co. v. Gough*, 5 *N. J. Super.* 295, 300 (*App. Div.* 1949), the court stated that a contrary view:

"would unnecessarily impede the agency's proper discharge of its continuing responsibility to administer the provisions of its governing act in the public interest."

and continued:

"From day to day agencies receive numerous applications for approvals and similar determinations and informal responses are expeditiously sent, without any contemplation by either the applicant

or the agency that the agency will be barred from later reaching a contrary conclusion upon a more complete presentation at formal hearing."

See also *Federal Trade Comm. v. Cement Institute*, 333 *U. S.* 683, 68 *S. Ct.* 793, 92 *L. Ed.* 1010 (1948), and *United States v. Morgan*, 313 *U. S.* 409, 421, 61 *S. Ct.* 999, 85 *L. Ed.* 1429 (1941).

Finally, the record shows and appellant admits that a hearing *de novo* was had before the State Division of Alcoholic Beverage Control with full opportunity to present proof and argument, and the Director's conclusions and orders were based on the evidence adduced at that hearing. *Mazza v. Cavicchia*, 15 *N. J.* 498 (1954).

Affirmed.