53 N.J. Super. 271 (1958)
147 A.2d 274
PRESBYTERIAN CHURCH OF LIVINGSTON, A NEW JERSEY CORPORATION, APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, AN AGENCY OF THE STATE OF NEW JERSEY, AND THE COLUMBIAN ASSOCIATION OF LIVINGSTON, A NEW JERSEY CORPORATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1958.
Decided December 22, 1958.
*273 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. William J. Reimer argued the cause for appellant.
Mr. Samuel B. Helfand argued the cause for respondent Division of Alcoholic Beverage Control (Mr. David D. Furman, Attorney General of New Jersey, attorney).
Mr. Edward W. Connolly argued the cause for respondent The Columbian Association of Livingston (Messrs. Connolly, Vreeland & Connolly, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from an order of the Director of the Division of Alcoholic Beverage Control granting the application of The Columbian Association of Livingston for a club liquor license at its premises, No. 272 West Northfield Avenue, Livingston.
On June 17, 1957 The Columbian Association of Livingston (Association) acquired the frame dwelling at No. 272 West Northfield Avenue, located in a residential zone. Upon *274 application to the local zoning board permission was granted, over objection of the appellant, to operate a clubhouse on the premises. The Presbyterian Church of Livingston (Church) is situated diagonally across the street, southwest from the applicant's premises. Adjoining the Church premises on the north, and directly across the street from the Association's premises, is located the manse of the Reverend William S. Ackerman, pastor of the Church. Next door to the manse is the home of Homer Asher. The Temple Emanu-El is located to the south of the Association's premises on the same side of West Northfield Avenue. These two properties are separated by a residential property, No. 268 West Northfield Avenue, having a frontage of 55 feet. This residence is owned by a Mr. Piserchio, who did not testify in this proceeding. A substantial part of the rear portion of the Temple's property is contiguous to the premises of the Association beyond the rear line of Piserchio's property.
An application by the Association for a club liquor license was filed with the Director of the Alcoholic Beverage Control rather than with the local issuing authority because a member of the Association was also a member of the issuing authority. R.S. 33:1-20.
Written objections to the issuance of a liquor license were filed with the Director by the Church, the Temple, and Asher. The objections stated that the premises of the applicant were within 200 feet of each of the religious institutions, and that as a result the granting of a license would violate R.S. 33:1-76, which provides:
"* * * no license shall be issued for the sale of alcoholic beverages within two hundred feet of any church or public schoolhouse or private schoolhouse not conducted for pecuniary profit, * * *. Said two hundred feet shall be measured in the normal way that a pedestrian would properly walk from the nearest entrance of said church or school to the nearest entrance of the premises sought to be licensed. * * *"
It was further claimed that the sale of alcoholic beverages in such close proximity to the Church and Temple would *275 be incompatible with their religious purposes. In addition, Asher stated that a liquor license on premises in such close proximity to his property, "in a strictly residential zone," would depreciate the value of the property. At the formal hearing on the application, the testimony disclosed that the Church has a membership of 750 adults and 600 children. The Association has a membership of 260 male adults.
After the taking of proofs, the hearer of the Division filed his report and recommended that the Association's application be denied for the reason that "the location of its club premises is in too close proximity to the churches * * *." Exceptions were then filed on behalf of the applicant, and after oral argument before the Director by the respective parties he reversed the recommendations of the hearer and granted the club liquor license on the grounds that, as to the Church, the proper measurement
"* * * from applicant's premises would be a point opposite its own entrance * * * along the northerly side of Northfield Avenue in southeast direction approximately 202 feet to a point opposite the parking lot of the church and then at right angles across Northfield Avenue 40 feet to the entrance of the parking lot or a total distance of approximately 242 feet,"
and, as to the Temple,
"* * * that there is a distance of 224 feet * * * between the entrance of the applicant's premises and the entrance to the Temple on the east side of the building."
Appeal is taken by the Church from this determination.
Appellant asserts as grounds of appeal that the premises of the applicant are within the 200 feet of the Church and of the Temple, using the measurement prescribed by R.S. 33:1-76, and, alternatively, that the granting of the license by the Director was an abuse of discretion.
The basic question to be determined from the proofs is the proper measurement of the distance from the applicant's premises to the Church and to the Temple. For *276 many years, as conceded at the oral argument, the Director has given R.S. 33:1-76 a practical construction, i.e., that the measurement should be, not between the actual entrances, but between points on the sidewalk intersecting any walk which a person would use in entering the properties in question. The Director has stated that this method of measuring the distance from an applicant's premises to a church or school is from the "nearest entrance" to the "nearest entrance," and that this formula has been relied upon in prior decisions. That method was used by the Director in this case and all the parties are in accord with it. Where the language of a statutory provision fairly admits of several interpretations, the contemporaneous and long-continued usage and practice under it require the construction thus put upon it to be accepted as the proper one. State v. Kelsey, 44 N.J.L. 1, 22, 23 (Sup. Ct. 1882); In re Hudson County, 106 N.J.L. 62, 75 (E. & A. 1929); Trustees of Rutgers College v. Richman, 41 N.J. Super. 259, 295 (Ch. Div. 1956). The dispute concerns not the propriety of this rule of measurement but its application by the Director in the present case.
The Church argues that the Director was in error when he used "the entrance of the parking lot" of the Church as one of the termini in measuring the distance. It is contended that he disregarded a crosswalk painted by the local police department across West Northfield Road which led directly into the paved walk leading to the entrance of the Church. By disregarding the crosswalk and measuring to the parking lot entrance, the Director found the distance to be approximately 242 feet. We reproduce here a drawing, received in evidence, showing the beginning point marked "A," the crosswalk, and point "B" where the sidewalk on the west side of West Northfield Road intersects the walk leading to the nearest entrance door of the Church.
*277 
There was testimony by Kennedy Savage, the engineer who prepared the drawing and a member of the Church, that he had made the measurements shown with a 300-foot steel surveyor's tape. He testified that the measurement began at a point (designated "A") on the walk in front of applicant's premises where it meets the driveway entering that property and proceeded south along the pathway to a point *278 at the beginning of the crosswalk which is painted on the road. He testified that the distance was 112 feet. He then measured from the last-mentioned point across the road to the point designated "B" on the drawing, "where there is a paved walkway leaving the public sidewalk to the entrance to the church door," a distance of 54 feet. Thus, if the crosswalk is used, the total distance as found by Savage is but 166 feet. There was no objection to the qualifications of Savage, his drawing, or his measurements.
It must be observed at the outset that there was no tenable basis for the Director's delineation of a pedestrian route involving crossing the street in front of the driveway to the parking area of the Church. No pedestrian would "normally" walk that way from applicant's premises to the Church entrance. Nor would that be a "proper" place to cross except perhaps on Sunday mornings when a policeman is assigned there to direct automobile traffic into the Church grounds. The route contemplated by the statute is one which would be used by pedestrians generally, not merely on one morning a week. The evidence indicates that the Church building is used every day.
The argument advanced by the Association is that the Director was justified in disregarding the crosswalk, mainly because West Northfield Road is a county road upon which local police have no statutory authority to paint a crosswalk. N.J.S.A. 39:4-202 requires that any traffic regulation under Article 21 of Title 39 be submitted to and approved by the Director of Motor Vehicles before becoming effective as provided in N.J.S.A. 39:4-8. And see N.J.S.A. 39:4-191.1. But we find this argument not responsive to the question we are called upon to decide. Under R.S. 33:1-76, we must determine whether a pedestrian would "properly" walk across this crosswalk as the "normal way" of proceeding from the Association's premises to the Presbyterian Church. Hopkins v. Municipal Board of Alcoholic Beverage Control, 4 N.J. Super. 484 (App. Div. 1949). And it is absurd to suggest that the average pedestrian would be "improperly" crossing the painted crosswalk simply because *279 the local police authorities had failed to obtain the approval of the Motor Vehicle Director. In using the language of the statute, the Legislature should be deemed to have been contemplating the average pedestrian. The average pedestrian, in planning his route, would hardly take into consideration that West Northfield Road was or was not a county road, or know whether or not the crosswalk had been sanctioned by the proper county or state authorities. He would rightfully assume that a painted crosswalk was authoritative and would "properly" follow it.
The respondents' argument that under R.S. 33:1-76 the "lawful" way is the only "proper" way for pedestrians to walk evidently rests upon certain language in the Hopkins case, supra. But Hopkins addressed itself to the question of whether a crosswalk was "proper" although not at a through intersection; it did not hold that the legality of a crosswalk for vehicular observance purposes necessarily governed in measuring the proximity of a church or school to a liquor license applicant's site. More nearly in point is Warren Street Chapel v. Excise Commissioners, 56 N.J.L. 411, 413 (Sup. Ct. 1894), where the distance between a church and the applicant's premises was held to be measurable under a local ordinance "by the shortest way of access between the two places." See also Langella v. Bayonne, 134 N.J.L. 235, 238 (Sup. Ct. 1946). Cf. Esso Standard Oil Co. v. North Bergen Twp., 50 N.J. Super. 90, 93 (App. Div. 1958).
The evidence reveals that about the year 1953 at the request of the Church a crosswalk was painted at the same location by the Livingston police which was repainted "during the early part of the summer of 1957" by the police at the request of the Church. It had been almost entirely obliterated before it was repainted. The present application for a liquor license is dated August 13, 1957. This and other crosswalk paintings by the police at various locations on county roads in Livingston were done without any authorization by any county or state agency.
*280 The parties have also stipulated that Essex County employees first participated in the painting of the crosswalk, at the same location, during the 1958 painting season and that the traffic engineer, under the authority of the county engineer, intends to maintain this crosswalk in the future "as a part of the county crosswalk program." The applicant and the Director have reserved objection to the relevancy of these facts. At the oral argument, the Director took the position that anything which occurred after his decision on March 12, 1958 is irrelevant to the question before us. See the second paragraph of R.S. 33:1-76 which provides in part:
"The prohibition contained in this section shall not apply to the renewal of any license where no such church or schoolhouse was located within two hundred feet of the licensed premises as aforesaid at the time of the issuance of the license, * * *"
There is a factual dispute as to the condition and visibility of the crosswalk in the summer of 1957. The Association maintains that the crosswalk, in addition to its "demonstrated illegality," had been abandoned for use before it was repainted. But four witnesses before the Division testified as to its visibility and use for at least two years prior to the summer of 1957. For present purposes it is sufficient, as clearly appears to be the fact, that the walk was plainly visible in repainted condition prior to August 13, 1957, the date when this application was filed with the Director, and prior to the date when the Director decided the application. Thus the walk must be deemed to have been in existence for purposes of the making of the statutory measurement in this case.
In reference to the contention of the Church that the license should have been denied for the additional reason that the applicant's premises were less than 200 feet from the Temple Emanu-El, we are not in agreement. The argument of the Church is based upon the contention that a door on the northwest side of the Temple building should be considered an entrance to that building. The proof is *281 clear, however, that the door in question is only a fire exit. There is no outside handle on it, and it is not intended to afford ingress from the outside. The regular entrances to the Temple are in the rear of the building. Access is gained thereto from a driveway on the southeast side of the building. In our opinion, the point of measurement should be in reference to that driveway, and this would result in the entrance to the Temple being more than 200 feet from the applicant's premises.
Although the Director's error in the method of measuring the distance from the applicant's premises to the Church leads to a reversal, we make passing reference to an alternative ground for reversal urged by the Church. It argues that the Director abused his discretion in granting the license. It maintains that even if the clubhouse were more than 200 feet from the Temple and from the Church, still the statute vests the Director with a discretionary power to deny the license which should have been exercised against the applicant in a case where, as here, two houses of worship are in such close proximity, albeit beyond the statutory 200 feet, not to mention a minister's residence across the street. Hickey v. Division of Alcoholic Beverage Control, 31 N.J. Super. 114, 117 (App. Div. 1954); Price v. Millburn, 29 N.J. Super. 103 (App. Div. 1953). In his decision, the Director said:
"Were this a retail consumption license permitting the sale of alcoholic beverages to the general public, I would have no hesitation in denying the application because of the proximity of applicant's premises to a church and a synagogue * * *."
But since the Director's distinction between a retail consumption license and a club liquor license enjoys no statutory sanction insofar as the 200-foot limitation is concerned, see Bivona v. Hock, 5 N.J. Super. 118, 121 (App. Div. 1949), there would seem no logically valid basis for it in respect of the present contention that there was a mistaken exercise of discretion in allowing a license to an applicant in such close proximity to two houses of worship. However, *282 in view of our holding we find it unnecessary to determine the question as to whether the Director properly exercised his discretion in granting the application.
The determination by the Director granting a club liquor license for the premises at No. 272 West Northfield Road is reversed.