59 N.J. Super. 306 (1960)
157 A.2d 712
BOROUGH OF FANWOOD, A MUNICIPAL CORPORATION, APPELLANT,
v.
ANTONIO ROCCO AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1959.
Decided January 26, 1960.
*310 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Max L. Rosenstein argued the cause for the appellant (Mr. William M. Beard, attorney).
Mr. Samuel B. Helfand, Deputy Attorney General, argued the cause for the Division of Alcoholic Beverage Control (Mr. David D. Furman, Attorney General, attorney).
Mr. George F. Hetfield argued the cause for the respondent Antonio Rocco (Messrs. Hetfield and Hetfield, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
The Borough Council of Fanwood unanimously denied Antonio Rocco's application for a place to place transfer of his plenary retail distribution ("package store") license. Rocco appealed to the Director of the Division of Alcoholic Beverage Control who reversed and ordered the granting of the transfer. Fanwood appeals.
Fanwood is a residential community whose boundaries form a rectangle roughly a mile square. It is bounded on the west by Plainfield and on the other three sides by Scotch Plains.
*311 At present Fanwood has two taverns and one package store, but they are located on the outskirts of the borough, very close to its borders. The package store belongs to Rocco. It is at 193 Terrill Road, in the extreme westerly corner of the borough, a few feet from Scotch Plains to the north and Plainfield to the west. Immediately next door to the package store Rocco or a member of his family  it is not clear which  operates one of the two taverns in the borough. Counsel for Fanwood referred to the tavern license as being held by "Lucy Rocco." Rocco did not testify but his son Anthony, Jr., who appeared for him, testified that "we" did "sell package goods" from the tavern "at times" as well as from the package store, and that:
"Q. In other words, if this transfer were granted, then you would be selling package goods from 252 South Avenue and there would also be sold package goods from the premises on Terrill Road, wouldn't there? A. We could if we wanted to, yes."
In short, there are at present no taverns or package stores anywhere in the borough except at two points near its remote borders. The requested transfer asks that Rocco's package store be moved about 1 1/2 miles to a point which is almost the exact geographic center of the borough, leaving the Rocco tavern where it is. The net result of the granting of the transfer would be that instead of two points in the borough at which liquor is sold, and both on the outskirts, Fanwood would have three, the new one being in the center of the borough where no sale of liquor (except warm beer) has been permitted at least since the repeal of prohibition. Indeed, the premises which Rocco intends to use as a package store were last occupied as a Christian Science reading room.
In its answer to the petition of appeal to the Director the borough said:

"Second Separate Defense
The Mayor and Council of the Borough of Fanwood have for many years past denied all applications for a plenary retail distribution license for any and all premises situated on Martine Avenue *312 and South Avenue in the Borough of Fanwood, for the reason that a retail liquor store in this section of Fanwood was not desired by the people of Fanwood.

Third Separate Defense
The Mayor and Council are officials elected by the Borough of Fanwood and they represent the people of Fanwood. It was their considered judgment that, taking into consideration the health, morals and general welfare of the people of Fanwood, the location of a plenary retail liquor store at 252 South Avenue would be against the public interest of the people of Fanwood. Among the facts considered were (a) the proposed liquor store is within one block of the Fanwood Presbyterian Church, which has a membership of approximately 2,000 people; (b) it is one and one-half blocks from Public School #4; and (c) there has always been a strong sentiment in the Borough of Fanwood against any more retail liquor stores."
The testimony presented before the hearer of the Division proved these allegations, i.e., that Fanwood denied the application because no tavern or package store had ever been permitted in the area and "a retail liquor store in this section of Fanwood was not desired by the people of Fanwood," that it was the governing body's "considered judgment that * * * the location of a plenary retail liquor store at 205 South Avenue would be against the public interest of the people of Fanwood," and that among the facts considered were the items set forth in the third separate defense.
It would serve no useful purpose to review the evidence in detail. However, it is pertinent to note that 252 South Avenue is in Fanwood's business center  a small one, consisting of about 25 stores. It is opposite the railroad station, at which trains arrive day and night. Two doors away from the proposed location is a store occupied as a confectionery, soda fountain and the only newsstand in the community, selling also magazines and comic books. It was described by all of the witnesses as the borough's major gathering place for youngsters. Indeed, some described it as Fanwood's only social center. Next door to the proposed location is a barber shop. Rocco admitted that at the council meeting at which the transfer was denied he was told orally by at least one *313 councilman that the location was "too close to a place where teenagers congregate."
One of the two "warm beer" licenses is held by the confectionery store and the other by a supermarket nearby.
As we view it, the question in this case is whether the Director has the right to compel a municipality to permit a package store or a tavern to move into an area where none exists and in which the municipality does not want one to exist.
Prior to the opinion in Hickey v. Division of Alcoholic Beverage Control, 31 N.J. Super. 114 (App. Div. 1954) there was no doubt, even in the mind of the Director, that in appeals of this type the function of the Director was "not to substitute [his] personal opinion for that of the local issuing authority but merely to determine whether reasonable cause exists for its opinion and, if so, to affirm irrespective of [his] personal view on the subject." Tube Bar, Inc. v. Commuters Bar, Inc., 18 N.J. Super. 351, 355 (App. Div. 1952); Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of City of Hoboken, 135 N.J.L. 502 (E. & A. 1947). The respondents' argument appears to be that Hickey and the cases decided thereafter have established a different rule, i.e., that in every appeal from the Director's action he must be sustained unless we find he "has manifestly erred or otherwise abused" his own discretion, and that this must be decided solely upon the Director's findings and decision without regard to what the local body heard, saw, said or did, because his findings and decision "entirely supersede the action taken at the original hearing level." Respondents assert that the action taken at the local level thus becomes "a wholly non-justiciable issue," citing Neiden Bar and Grill, Inc. v. Municipal Board of Alcoholic Beverage Control of the City of Newark, 40 N.J. Super. 24, 29 (App. Div. 1956).
Respondents misunderstand Hickey, Neiden and the other cases which they say have established these rules: Board of Com'rs of Borough of Belmar v. Division of Alcoholic *314 Beverage Control, 50 N.J. Super. 423 (App. Div. 1958); Township Committee of Lakewood Tp. v. Brandt, 38 N.J. Super. 462 (App. Div. 1955); Rajah Liquors v. Division of Alcoholic Beverage Control, 33 N.J. Super. 598 (App. Div. 1955), certification denied 18 N.J. 204 (1955); Florence Methodist Church v. Township Committee of Florence Tp., 38 N.J. Super. 85 (App. Div. 1955).
In Neiden the court pointed out that "the only ground of appeal urged" before it was whether the approval of a transfer by the municipal board and affirmed by the Director "should be reversed because of the failure of the municipal board to make findings with respect to the objections raised there." 40 N.J. Super., at page 29. It was in disposing of this single ground of appeal that this court said that, since the Director had made "independent findings" upon the basis of which he had affirmed the municipality, the appellant was not prejudiced by the municipality's failure to make findings, even assuming it was the municipality's duty to do so. This merely means that when the Director makes findings of fact upon sufficient evidence there is no need to go back to the findings of the local board when he affirms. However, the Neiden case did not hold that upon an appeal such as here the reasons of the local body are to be ignored. On the contrary, they may not be ignored, either by the Director or by us. Cf. Price v. Excise Board of Town of Millburn, 29 N.J. Super. 103 (App. Div. 1953); Biscamp v. Township Council of Tp. of Teaneck, 5 N.J. Super. 172 (App. Div. 1949). Upon an appeal such as this, where the underlying facts are not in dispute, we assay what was done by the Director against that which was done by the local board upon the basis of those facts, and thus determine whether the Director was in error in reversing the local board. Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of City of Hoboken, supra.
Nor is it always true that this court may not reverse the Director unless we find he "abused" his own discretion or (as is said more mildly in some of the cases) that his action *315 "was a manifestly mistaken exercise of his own sound discretion." The element of the Director's "discretion" enters into only a certain class of cases, as we shall see.
The misunderstanding of the scope of review has doubtless been caused in large measure by the unfortunate use of the term "abuse of discretion" or its equivalent in some of the cases. Cf. Smith v. Smith, 17 N.J. Super. 128, 131 (App. Div. 1951), certification denied 9 N.J. 178 (1952). If all of us could always remember that "abuse of discretion" means, as Justice Case said in Hager v. Weber, 7 N.J. 201, 214 (1951), "nothing else than that the court's ruling went far enough from the mark to become reversible error," such misunderstanding would not arise. Better yet, we might stop using the term, for in a brief it usually obscures the issues and never illuminates them, while in an opinion it usually beclouds the real basis for the decision and misleads the reader.
To begin with, the scope of the Director's review of local action is not always the same. It depends upon the issue he is called upon to review. We are aware of the impossibility of keeping "law" and "fact" in separate exclusive compartments. However, for the purposes of this opinion those terms are sufficiently distinct to say that if the issue before the Director is one of law, his "discretion" has nothing to do with it, sound or otherwise. Therefore, when this court reviews his decision upon such a question, we reverse if he was mistaken in the law and affirm if he was correct, just as if he were a trial judge. Many of the reported cases have been of this type: Conover v. Burnett, 118 N.J.L. 483 (Sup. Ct. 1937) (Common Pleas Court, then the issuing authority, refused renewal of package store license to A. & P. because it undersold competitors; Commissioner reversed because that was not a valid legal reason for refusal; affirmed); South Jersey Retail Liquor Dealers Ass'n v. Burnett, 125 N.J.L. 105 (Sup. Ct. 1940) (tavern transfer denied because transferee said that he would sell only package goods; Commissioner reversed, holding that under the then *316 law the local board had no legal right to compel transferee to run a tavern; affirmed); City of Wildwood v. Garrett, 126 N.J.L. 203 (Sup. Ct. 1941) (renewal of package store license refused because licensee, open only in the summer months, refused to stay open all year; Director reversed because not a valid legal reason; affirmed); Bivona v. Hock, 5 N.J. Super. 118 (App. Div. 1949) (transfer to new location denied because new premises would be larger and more attractive and would sell more liquor; Director affirmed; reversed because not a valid legal reason); Dal Roth, Inc. v. Division of Alcoholic Beverage Control, 28 N.J. Super. 246 (App. Div. 1953) (Jersey City granted a transfer, construing its ordinance as permitting it; the Director construed it otherwise and reversed; this court affirmed); Tube Bar, Inc. v. Commuters Bar, Inc., supra (both Jersey City and the Director erroneously construed an ordinance and this court reversed); Petrangeli v. Barrett, 33 N.J. Super. 378 (App. Div. 1954) (transfer in violation of ordinance; reversed by Director; affirmed); Township Committee of Lakewood Tp. v. Brandt, supra (transfer denied because of a "desire to have the license `die'"; reversed by Director as illegal reason; affirmed). See also Passaic County Retail Liquor Dealers' Ass'n v. Board of Alcoholic Beverage Control for the City of Paterson, 37 N.J. Super. 187 (App. Div. 1955); Mayor & Council of Borough of Totowa v. Chicken Barn, Inc., 41 N.J. Super. 459 (App. Div. 1956).
The cases of Liptak v. Division of Alcoholic Beverage Control, 44 N.J. Super. 140 (App. Div. 1957), certification denied 24 N.J. 222 (1957), and Presbyterian Church of Livingston v. Division of Alcoholic Beverage Control, 53 N.J. Super. 271 (App. Div. 1958), certification denied 29 N.J. 137 (1959), are interesting illustrations of the scope of the court's review where the issue involved is one of law and not of discretion. In the Liptak case the Director "in a self-initiated proceeding" set aside a transfer of a license issued by the municipality because it had not been renewed within the time fixed by law and thus became a *317 new license beyond the statutory limit, and this court affirmed. In the Presbyterian Church case the Director issued a club license on an application made directly to him because a member of the local governing body was a member of the club. We reversed because he had misapplied the section of the statute relating to distances from churches and schools.
The second class of cases in which the Director's "discretion" is not involved, and in which his decision is reviewed in this court accordingly, is that in which the Director is called upon to decide disputed questions of fact, as, for example, in disciplinary and similar proceedings. Illustrations of such cases are Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501 (App. Div. 1956) (whether sale was made to a minor); Florence Methodist Church v. Township Committee of Florence, supra (whether applicant was a "front" for her disqualified husband), and Neiden Bar & Grill, Inc. v. Municipal Board of Alcoholic Beverage Control of the City of Newark, supra (whether transferree was a fit person). In such cases the Director's "discretion" has nothing to do with his findings of the underlying facts. If the evidence is not there, no amount of "discretion" can supply the deficiency. Therefore, if he finds a licensee guilty upon insufficient or illegal testimony, we reverse. However, if after finding sufficient facts to warrant disciplinary action the Director imposes a penalty, the amount of the penalty would be an exercise of his discretion, the review of which would be governed by that which we will have to say about the third class of cases.
The third and last of the classes into which we have chosen to divide the cases for the purpose of this analysis is that in which the appeal to the Director is from action taken by the local agency which involved the local agency's discretion. The following are cases of that type: Bumball v. Burnett, 115 N.J.L. 254 (Sup. Ct. 1935) (borough refused to issue any more licenses; Commissioner affirmed; affirmed); Board of Com'rs. of Town of Phillipsburg v. Burnett, 125 N.J.L. 157 (Sup. Ct. 1940) (Commissioner *318 reversed licenses as too many; affirmed); Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs. of City of Hoboken, supra (Commissioner reversed licenses as too many; affirmed); Brush v. Hock, 137 N.J.L. 257 (Sup. Ct. 1948) (Commissioner reversed licenses as too many; affirmed); Zicherman v. Driscoll, 133 N.J.L. 586 (Sup. Ct. 1946) (renewal refused for bad conduct; Commissioner affirmed; affirmed); Passarella v. Board of Commissioners, 1 N.J. Super. 313 (App. Div. 1949) (transfer granted to vacant lot, building to be built; Director affirmed; affirmed); Biscamp v. Township Council of Tp. of Teaneck, supra (transfer denied because on narrow road too near park and intersection and a traffic hazard; affirmed by Director; affirmed); Price v. Excise Board of Town of Millburn, supra (license denied because too near high school; Director affirmed; affirmed); Rajah Liquors v. Division of Alcoholic Beverage Control, supra (transfer approved; reversed by Director because too many taverns in the new locality and too close to proposed new school; affirmed by this court); Board of Com'rs. of Borough of Belmar v. Division of Alcoholic Beverage Control, supra (license renewed with conditions by local authority; Director deleted conditions; affirmed); Nordco, Inc. v. State, 43 N.J. Super. 277 (App. Div. 1957) (renewal refused to trouble spot; Director affirmed; affirmed).
However, even in this third class of cases the Director's "discretion" does not always play a part. For example, we conceive that the Director has no right to compel a municipality to issue a license, even if the municipality has none at all, or to issue a new one when the municipality has several but in good faith wants no more. Bumball v. Burnett, supra. Contrary to the law in some states, our law permits municipalities to forbid taverns and package stores altogether. N.J.S.A. 33:1-12; N.J.S.A. 33:1-44, 45, 46. Cf. Barry v. O'Connell, 303 N.Y. 46, 100 N.E.2d 127 (Ct. App. 1951); Compare State ex rel. McCarten v. Harris, *319 112 Mont. 344, 115 P.2d 292 (Sup. Ct. 1941) with Phillips v. Head, 188 Ga. 511, 4 S.E.2d 240 (Sup. Ct. 1939).
When there is an appeal to this court from the action of the Director in cases involving the exercise of municipal discretion, we take into consideration and give due weight to the fact that the Director has special expertness and broad experience in this general field. But our obeisance to that expertness and experience is not equally deep in all cases. It depends upon the issues in each case. If the case is one which he is plainly better equipped than we are to decide, because of his expertness, knowledge and experience, we naturally defer to his judgment. In some cases that deference would be almost to the point of considering his judgment conclusive. Cf. Hickey v. Division of Alcoholic Beverage Control, supra; Board of Com'rs. of Borough of Belmar v. Division of Alcoholic Beverage Control, supra. On the other hand, where the issues are such that we can evaluate them as well as he, we do not defer to his expertness to the same degree. Bumball v. Burnett, supra.
In short, upon the review of a reversal by the Director of municipal discretionary action we give the Director the benefit of a presumption of the correctness of his conclusion which is engendered by the knowledge that he is an expert and we are not, but the strength of that presumption varies with the degree of expertness involved, which in turn depends on the subject matter.
Failure to recognize the spirit and the legislative policy of the statute under which an administrative agency functions may be sufficient reason to reverse its action, even in the absence of express prohibitory language in the statute. Cf. R.S. 33:1-38; Greco v. Smith, 40 N.J. Super. 182, 184-185 (App. Div. 1956). Applying these principles to the case at bar, we are satisfied that the Director's ruling was erroneous. The legislative policy enunciated in the Alcoholic Beverage Control Act requires that his action be reversed and the action of the municipality affirmed.
*320 The primary purpose of the act is to promote temperance (R.S. 33:1-3) and "to be remedial of abuses inherent in liquor traffic and shall be liberally construed" to effect those purposes. R.S. 33:1-73; Hudson Bergen County Retail Liquor Stores Ass'n, Inc. v. Board of Com'rs. of City of Hoboken, supra. Because these are the purposes there is a sharp and fundamental distinction between the power of the Director when a license is denied by the municipality and when one is granted, because refusing a license cannot lead to intemperance or to any of the other evils the act is intended to prevent. Cf. Cummins v. Board of Adjustment of Borough of Leonia, 39 N.J. Super. 452 (App. Div. 1956), certification denied 21 N.J. 550 (1956).
The transfer of a license into an area in which there are no taverns or package stores is in the same category as the issuance of an original license. No person is entitled to either as a matter of law. N.J.S.A. 33:1-26; Zicherman v. Driscoll, supra, 133 N.J.L., at page 588; Bumball v. Burnett, supra, 115 N.J.L. 254.
As we have indicated, when a municipality decides in good faith that a substantial area within its boundaries in which there are no taverns or package stores shall remain that way, the Director may not interfere. That there are no licenses in the area is no reason that there should be one. Cf. Mauriello v. Driscoll, 135 N.J.L. 220 (Sup. Ct. 1947). Nor does the municipality need to have any articulated reasons for keeping the area inviolate. It is sufficient if in good faith and not with the intention of oppressing the individual applicant the governing body wants it that way. If the motive of the governing body is pure, its reasons, whether based on morals, economics, or aesthetics, are immaterial. In Bumball v. Burnett, supra, after Bumball applied for a license the governing body of Bernardsville informally decided to issue no more licenses for the time being and rejected his application. Bumball appealed to the Commissioner, who affirmed. The Supreme Court in turn affirmed, saying at page 255 of 115 N.J.L.:
*321 "Apart from this, and assuming the facts claimed, to wit, that the ordinance itself placed no limit on the number of licenses to be issued, and the resolution of council to grant no more was adopted after prosecutor's application and one other were already filed, we see no illegality whatever in the refusal of a particular license, at least so long as the refusal is not shown to be fraudulent, corrupt, or inspired by improper motives. Nothing of the kind appears in this case. Prosecutor argues apparently that a liquor license is to be obtained and is obtainable on the same theory as a license to carry on, say a grocery business, demandable by any respectable citizen on payment of the prescribed fee; but that is not the case. The sale of intoxicating liquor is in a class by itself. Paul v. Gloucester County, 50 N.J.L. 585, 595. `No one has a right to demand a license. License is a special privilege granted to a few, denied to the many.' Ibid., 50 N.J.L. 585, at page 596. `There is no inherent right in a citizen to sell intoxicating liquors by retail; it is not a privilege of a citizen of the state of the United States.' Meehan v. Board of Excise Com'rs., 29 N.J.L.J. 370; Id., 73 N.J.L. 382, 64 A. 689, 690. See, also, Hagan v. Town of Boonton, 62 N.J.L. 150.
One phase of the present argument for the writ seems to be that as the ordinance (as claimed) says nothing about the number of licenses to be issued, the borough council has no power to call a halt until, with a slate clean of pending applications, it ordains a limit, or at least fixes a limit by resolution: but we see no merit in this. If the ordinance had fixed 100 as a limit, still the council, in its discretionary power to license or not to license, could stop short of that number at any point, or could license A and refuse B. As a matter of history, in this very county of Somerset a quarter of a century ago, when licenses were controlled by the court of common pleas, and there was no legal limit on the number, that court announced that, in its opinion, there were enough licensed places in the county, and no more licenses would be granted until further order. No question of the legality of this action was ever formally raised."
The Legislature has entrusted to the municipal issuing authority the right and charged it with the duty to issue licenses (R.S. 33:1-24) and place-to-place transfers thereof "[O]n application made therefor setting forth the same matters and things with reference to the premises to which a transfer of license is sought as are required to be set forth in connection with an original application for license, as to said premises." N.J.S.A. 33:1-26. As we have seen, and as respondent admits, the action of the local board *322 may not be reversed by the Director unless he finds "the act of the board was clearly against the logic and effect of the presented facts." Hudson Bergen County Retail Liquor Stores Ass'n, Inc. v. Board of Com'rs. of City of Hoboken, supra, 135 N.J.L., at page 511. In Ward v. Scott, 16 N.J. 16 (1954) the Supreme Court dealt with an appeal from a zoning variance which had been granted by a municipality. Therefore, what the court said in that case is doubly weighty here, for here the more serious matter of liquor is involved, and here the municipality did not grant, but denied, the application. The court said in Ward (16 N.J., at page 23):
"Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications * * *. And their determinations should not be approached with a general feeling of suspicion, for as Justice Holmes has properly admonished: `Universal distrust creates universal incompetence.' Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 151, 58 L.Ed. 319, 324 (1913). Where, as here, the application * * * has been given careful and conscientious consideration by the zoning board and the town council and has been acted upon by both of them in strict conformity with the procedural and substantive terms of the statute, the ultimate interests of effective zoning will be advanced by permitting the action of the municipal officials to stand, in the absence of an affirmative showing that it was manifestly in abuse of their discretionary authority."
Respondents cite Township Committee of Lakewood Tp. v. Brandt, supra, for the proposition that "an owner of a license or privilege acquires through his investment therein an interest which is entitled to some measure of protection in connection with the transfer." That merely means that in certain situations (of which the Lakewood case is an example) there are equities in favor of the holder of a license, which an applicant for a new license cannot claim, which should be considered together with all of the other factors in the case. Cf. Grundlehner v. Dangler, 29 N.J. 256, 269 (1959); Bivona v. Hock, supra; Board of Com'rs. of Borough of Belmar v. Division of Alcoholic *323 Beverage Control, supra. But the holding of a license does not overcome considerations such as we have here.
In his brief the Director said he reversed because of "the Borough's failure to give proper attention to the paramount issue of public convenience and interest." (Italics ours) This, he says, is shown (quoting from his brief) by:
"A mere perusal of Exh. A-1, [the map of Fanwood] is starkly indicative of the fact that the operation of the municipality's lone package store at the new location would serve the public convenience. The transfer would permit its removal from the most northwesterly tip of the community, in a wholly residential section, to a centrally located business section on a heavily-trafficked state highway."
The terms "public necessity" and "public convenience" are probably as confusing and misleading when used in connection with liquor cases as the term "abuse of discretion." It is to be noted that these terms are not found in the statute but are the unfortunate products of our case law. Judge Clapp pointed this out in the Lakewood case, supra, at pages 464-466 of 38 N.J. Super., saying: "An even more obvious question arises as to the significance of the term in connection with intoxicating liquors. Is there any public necessity for a tavern?" Cf. Barry v. O'Connell, supra. It would help clarify our thinking if the use of such sonorous expressions were avoided wherever possible, and instead there were hammered out a plain statement of the facts and the considerations leading to the decision. The Director may not compel a municipality to transfer licensed premises to an area in which the municipality does not want them, because there more people would be able to buy liquor more easily. Such "convenience" may in a proper case be a reason for a municipality's granting a transfer but it is rarely, if ever, a valid basis upon which the Director may compel the municipality to do so.
The judgment is reversed. Costs only against respondent Rocco.